Ernest A. MINICHELLO; Mary Minichello, Plaintiffs-Appellants,

v.

U.S. INDUSTRIES, INC., Defendant-Appellee.

No. 83–3236.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 19, 1984.

Decided Feb. 27, 1985.

Thomas Mester, Komito, Nurenberg, Plevin, Jacobson, Heller & McCarthy Co., Harlan Gordon, Richard Alkire, Richard Demsey, Joel Levin (argued), Cleveland, Ohio, for plaintiffs-appellants.

Thomas Schick (argued), McNeal, Schick & Archibald, Cleveland, Ohio, for defendant-appellee.

Before JONES, Circuit Judge, and PECK and BROWN, Senior Circuit Judges.

JOHN W. PECK, Senior Circuit Judge.

This is a product liability case. It presents the question of whether it is error in such a case for a court to admit evidence that a product does not violate federal Occupational Safety and Health Administration (OSHA) standards, in light of the fact that Congress did not intend for OSHA standards to affect the standard of civil liability. Because we consider the admission of such evidence to have been prejudicial error, we reverse and remand for a new trial.

Plaintiff-Appellant Ernest Minichello worked as a tool and die maker for Ford Motor Company from 1963 to 1981. His suit concerns an injury suffered while working on a die. A die is used in shaping metal products. Part of a die maker's job is to test each die after making it. In this process, a machine called a "spotting press" is used in the Ford plant. The spotting press used by Minichello was manufactured by CMC Clearing, whose successor in interest, U.S. Industries, is the defendant-appellee.

The CMC Clearing spotting press consists of two parts, a platform called a sliding bolster plate and an overhead part called a ram. The die maker stands on the surface of the bolster plate as he secures the die to be tested. The plate measures eight feet by sixteen feet, and stands thirty-two inches (2′8″) off the factory floor. No guard rail surrounds the plate. The plate's surface, which is made of smooth steel, contains a series of grooves. The grooves are spaced six inches apart across the bolster plate. Each groove is about four inches deep and one inch wide. The die maker secures the bottom half of the die to the bolster plate, with the grooves serving to hold this half of the die in place. The die maker stands on the bolster plate as he attaches the top half of the die to the ram with a large wrench. After he secures the two halves of the die in their respective positions, the die maker leaves the bolster plate, and the ram descends, bringing the two parts of the die together.

On August 2, 1979, Minichello was at work on the spotting press. As he tried to secure the top part of the die he was working on, his wrench slipped and he lost his balance. He caught his foot in one of the plate's grooves and fell from the platform to the concrete factory floor. As a result of the fall, he suffered a facial laceration and a third-degree shoulder separation.

Minichello and his wife Mary filed suit against U.S. Industries in the United States District Court for the Northern District of Ohio, Eastern Division. Minichello sought damages for his injuries, asserting negligence, breach of express and implied warranties of merchantability, and strict liability in tort, as grounds for recovery, but at trial chose to proceed under the theories of strict liability in tort and breach of implied warranty only. Plaintiffs withdrew their claims under the theories of negligence and breach of express warranties and presented no evidence in connection therewith. Mrs. Minichello sought damages for the loss of her husband's services because of the injury. A jury trial was held which ended in a general verdict for defendant. The court entered judgment for the defendant and the Minichellos have appealed to this court.

Appellants urge a number of grounds for reversal. They argue, first, that it was error for the trial court to allow the jury to learn that the bolster plate's lack of a guardrail arguably did not violate OSHA standards. Appellants had presented the expert testimony of Dr. Vern Roberts, a licensed safety engineer. Dr. Roberts testified that the failure to place a guardrail

around the bolster plate made the plate, in view of its height and its slick surface, unreasonably dangerous. On cross-examination, defendant's counsel questioned Dr. Roberts about a supposed variance between his opinion on the one hand and those of OSHA and of the American National Standards Institute (ANSI), an industry group, on the other. In the course of this questioning, the defense brought before the jury the content of the OSHA regulation governing raised working surfaces, OSHA Safety & Health Standards § 1910.23(c), which requires employers to guard surfaces four feet or more above the floor, without reference to lower surfaces. (The surface from which Minichello fell, of course, was less than three feet above the floor.) Counsel for the Minichellos objected to the questions on the OSHA regulations. Counsel for U.S. Industries responded by telling the judge, out of the jury's hearing, that Dr. Roberts had "expressed an opinion about this [bolster plate] being an unreasonable hazard and this regulation establishes otherwise." The court admitted the testimony, saying that Dr. Roberts was "allowed to express his opinion, ... and ... as a result, the other side should be allowed to test his opinion." Appellant argues that the OSHA standards are irrelevant to the question of the platform's defectiveness, and that they could only have misled and confused the jury.

■ The Occupational Safety and Health Act, which provides the legislative grant of authority to OSHA, specifically states that it is not intended to affect the civil standard of liability. The Act states:

> Nothing in this chapter shall be construed to supercede or in any manner affect any workmen's compensation law or to enlarge or diminish or affect in any other manner the common law or statutory rights, duties or liabilities of employers and employees under any law with respect to injuries, diseases or death of employees arising out of, or in the course of, employment.

29 U.S.C. § 653(b)(4). To use OSHA regulations to establish whether a product is unreasonably dangerous is thus improper. If knowledge of the regulations leads the trier of fact to find a product defective, the effect is to impermissibly alter the civil standard of liability. If, on the other hand, knowledge of the regulations does not affect a result the trier of fact would have reached even without the knowledge, the regulations serve no purpose and their discussion is simply a waste of time. We do not mean to suggest that OSHA regulations can never be relevant in a product liability case, but OSHA regulations can never provide a basis for liability because Congress has specified that they should not.

■ OSHA regulations are not relevant to the issue of U.S. Industries' liability to the Minichellos for a further reason. OSHA regulations pertain only to employers' conduct. *See* 29 U.S.C. § 654; *McKinnon v. Skil Corp.*, 638 F.2d 270, 275 (1st Cir.1981). U.S. Industries was not Minichello's employer; the Ford Motor Company was. The OSHA regulations, then, do not even apply to the relationship between U.S. Industries and Minichello, which was that of producer and consumer. Restatement Second of Torts § 402A comment 1 (1965). Even, then, if the OSHA regulations were intended to affect civil liability— as Congress has made clear they are not— they would not bear upon the relationship between the parties in this case.

■ U.S. Industries appears willing to concede that the OSHA regulations have no application to the issue of appellee's obligation in the premises. It attempts to argue, nonetheless, that the OSHA regulations may have been admissible for the limited purpose of testing whether the expert witness was correct in his opinion that the bolster plate was defective. What counsel for U.S. Industries describes as a limited purpose is not a limited purpose at all, however. The question of whether the expert was right in considering the plate defective merges into the question of whether the plate was defective. The so-called limited purpose for which the evidence was purportedly admitted, then, is

inseparable from the purpose for which we have shown the evidence would have been inadmissible. There is thus no basis whatever under which this evidence could have been admitted in this case. Even if there were such a limited purpose under which the evidence could have been admitted, moreover, we must note that the jury was not told that the evidence was admitted only for such a limited purpose, as the judge's comments about the reasons for which he allowed the evidence to be admitted were made out of the hearing of the jury. The jury's consideration of this evidence was therefore unrestricted.

■ Appellee's further argument that questions about the OSHA standards were not improper since these standards are identical to ANSI standards, to which defendant referred without objection, must also fail. Assuming without deciding that discussion of the ANSI standards was not improper, it does not follow that discussion of the OSHA standards was proper. The use of OSHA standards to alter the civil rule of liability is precluded by statute (29 U.S.C. § 653(b)(4), *supra*). No such law limits the use of ANSI standards, but the American National Standards Institute lacks the prestige of the Occupational Safety and Health Administration.

■ The next question we address, having determined the questions about the OSHA regulations to have been improper, is whether the answers were prejudicial to the Minichellos. Considered in context, it seems clear that they were. Defendant's counsel drew attention to OSHA's responsibility "to promote safety so far as employees are concerned." When Dr. Roberts attempted to question the sufficiency of the OSHA standards, defendant's counsel demanded, "Nevertheless, they are in the business of eliminating hazards for workmen, is that not true?" Defendant's counsel also referred to OSHA's having performed "hazard analysis" on products and suggested to Dr. Roberts that OSHA's opinion of the unreasonable dangerousness of surfaces like the bolster plate was different from his own. The form and nature

of counsel's questions necessarily implied to the jury the impression that a competent government agency, charged with the protection of worker safety, had made a reasoned judgment that surfaces like that on which Mr. Minichello worked pose no unreasonable hazards. The jury might well have concluded, on this basis, that the platform was not unreasonably dangerous. The prejudice to plaintiffs seems obvious, and with all due respect, we believe permitting the questions constituted an abuse of discretion. Like *Richardson v. United States*, 150 F.2d 58 (6th Cir.1945), "[t]his was a close case" (*id.* at 64) in which improper questions by counsel may have tipped the balance. Plaintiffs are entitled to a trial not distorted by such improper questions.

■ Although we decide the case on this ground, we comment briefly on further assignments of error by appellants for the court's assistance on retrial. Appellants have objected to the fact that the jury instructions did not state explicitly that the burden of proof as to assumption of risk lay on defendant. The instructions did state the elements of assumption of risk correctly (without using the term), and they charged the jury that these elements would provide the basis for a verdict for defendant only if the jury found their existence by a preponderance of the evidence. These instructions conveyed to the jury all the information appellants wanted conveyed, and may even have done so in a more intelligible fashion than the instructions they would have preferred. We find no error in this regard.

■ Appellants' argument that no substantial evidence supports the jury's finding of assumption of risk is very easily disposed of. The jury made no such finding. The jury returned a general verdict for defendant, and made no special findings at all. Appellants seem belatedly to have grasped this point, for they attempted in their reply brief to shift the question to one

of whether the trial court erred in even submitting the issue of assumption of risk to the jury. A reply brief on appeal is submitted after the opposing party has had its last opportunity to brief the issues, and does not provide a permissible occasion for suggesting new grounds for reversal.

Appellants urge that defense evidence offered of the non-occurrence of past accidents with respect to bolster plates was irrelevant and should have been excluded. Witnesses for the defense spoke not only of the particular bolster plate from which Minichello fell, one which was specially custom-made, but of other bolster plates. U.S. Industries, moreover, does not seem to have kept systematic safety records, and the U.S. Industries' employees who testified as to the non-occurrence of past accidents seem not to have been particularly conversant with the bolster plate in question. However, these circumstances go to the weight of the evidence rather than to its admissibility. On the general question of whether evidence of non-occurrence of past accidents is admissible, there seem to be good arguments both ways.

This circuit has never ruled on the issue. This court discussed the question without deciding it in *Koloda v. G.M. Parts Div., General Motors,* 716 F.2d 373 (6th Cir. 1983). A footnote to that decision noted that the question divides courts and commentators, but that the "modern trend" favors the admission of such evidence. Id. at 375–76 n. 3.[1] Suffice it to say that in this case we do not believe the trial court abused its discretion. Appellants also urge that the trial court erred in failing to grant their motion to render a directed verdict on the issue of the spotting press's defectiveness. Our decision to remand the case renders this question moot.

We reverse and remand for further proceedings not inconsistent herewith.

---

1. *Koloda* did hold that such evidence would be relevant to show that manufacturer did not have notice of the machine's defectiveness. Since the plaintiffs withdrew the negligence count, whether or not the manufacturer had such notice was not an issue in the present case, and the evidence was not admitted for that purpose.