865 F.2d 1268
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Judith A. NIX, Plaintiff-Appellee,
v.
UNITED AIRLINES, INC., Defendant-Appellant.
 No. 87-2176.
 United States Court of Appeals, Sixth Circuit.
 Jan. 6, 1989.
 
 Before NELSON and BOGGS, Circuit Judges, and GEORGE CLIFTON EDWARDS, Jr., Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Appellant United Airlines appeals from a judgment based on a jury verdict entered in favor of the plaintiff Judith Nix. Nix was awarded damages in the amount of $840,000 plus interest, costs, and fees. United appeals, in particular, the district court's denial of its motion for judgment notwithstanding the verdict (JNOV) and its motion for new trial. We affirm the decision of the court below.
 
 
 2
 * This case is concerned with the events surrounding the termination of Nix's employment with United. Nix started working for United in 1966. She began as a clerical worker and then served in different positions in several cities before taking a sales position in Detroit, starting in 1978. Her job involved soliciting businesses to ship their goods on United. She held this position until she was terminated in March 1983.
 
 
 3
 From the time she began her Detroit sales job in 1978 until June 1981, Nix received very favorable evaluations of her work and periodic raises. In June 1981, United named Alfredo Wong supervisor of the sales division, operating out of the Cleveland office. According to United, Wong wanted to create a more aggressive sales department. To that end, Wong introduced increased performance expectations and instituted more training programs. United also at this time decided that they wanted to enter the already competitive overnight delivery (or air express) business. Wong urged his sales staff to solicit businesses for air express work even if those businesses were already air express customers of freight forwarders who were also United's main customers in the cargo sales field, the sales office's main source of business. This competition, Nix contends, made life difficult for United sales representatives.
 
 
 4
 In March 1982, Nix received her first evaluation from Wong. She was told to improve in several areas, including the need to develop more confidence and assertiveness; the application of new sales techniques; the delegation of service requests; and the 'prospecting' of new accounts. Wong also told Nix that she had to "work on [her] cosmetic appearance", adding that "an 'overdone' look detracts from your [Nix's] professional image." Nix testified that when she complained about this remark to Wong he belittled her, calling her a "minor league player." She further testified that Wong told her that if she looked that way again, he would send her home.
 
 
 5
 In June 1982, Wong forced salesman Russell Squelch, who was 60 years old and had been working for United for 36 years, to resign. Pat Mai, a 27-year-old male who had been working in sales for 6 months, was transferred from Cleveland to Detroit to replace Squelch. Shortly after Mai arrived, Wong gave him Nix's main account, General Motors. In July 1982, according to Nix's testimony, when Wong was in Detroit on one of his periodic visits, Nix asked him about the status of her salary review and about her place in the company. Wong, according to Nix, told her that she had three options. She could show improvement and stay in sales or she could improve in other areas and move to the executive offices in Chicago; she could get married; or she could do something less demanding, such as making salads in the flight kitchen, referring to a job Nix had previously held in United's catering division.
 
 
 6
 In September 1982, Wong gave Nix her midyear performance review. He stated that while she had improved in developing new accounts, she needed to improve in several areas. He told her that she needed to improve, for example, her reports, her sales attitude, and her time utilization. He cautioned her that failure to improve in these areas could lead to the loss of her position.
 
 
 7
 In January 1983, Wong transferred another of Nix's main accounts, Ford Motor Co., to Mai. The same month, however, Nix received an improved evaluation from Wong, stating that she had developed new accounts and receiving an overall satisfactory rating of 2 on a scale of 5 (5 being the highest possible rating.) In February 1983, Wong transferred the Burlington Northern account to Mai. In a letter dated February 23, 1983, Wong again criticized Nix for not initiating contacts with customers, telling her if she did not become more aggressive, "there may be no place for you in this department."
 
 
 8
 Nix was upset by the events at work and began to see a psychologist. On March 8, 1983, after cancelling a meeting she was scheduled to have with Wong that day, she filed a civil rights complaint with Michigan Department of Civil Rights. On March 11, 1983, she met with Wong. She immediately told him that she filed a complaint. Nix testified that Wong stated that "this changes things" and then fired her. Wong testified that he made that statement and the decision to terminate her only after she told him that she could not work under the current system. Nix was officially terminated the next day, without being given a probationary period.
 
 
 9
 On October 27, 1983, Nix filed this action. She made three claims: (1) that she was discriminated against on account of her sex in violation of Michigan's Elliott-Larsen Civil Rights Act[1]; (2) that she was terminated because she filed a civil rights complaint; and (3) she was terminated in breach of an implied employment contract that permitted termination only for cause. After United removed the case to federal court, a five-day trial was held beginning on May 28, 1987. On June 3, 1987, the jury rendered a verdict in favor of Nix on all three counts of her complaint. They awarded her $160,000 for present economic losses (in wages and benefits), $550,000 for future economic losses, and $130,000 for punitive damages on the retaliatory discharge claim. The economic losses were not tied to any particular count of the complaint. Nix was also awarded interest, fees, and costs, which made the total judgment against United $1,303,007.03. United made motions for JNOV and for a new trial, but the district court denied them. This appeal followed.
 
 II
 
 10
 The standard of review of a district court's denial of a motion for JNOV is the same as that for the granting of a directed verdict. Such a motion may be granted only when the judge concludes, without weighing the credibility of the witnesses and while viewing the evidence in the light most favorable to the opponent of the motion, that no reasonable person could find in favor of the opponent. Morelock v. NCR Corp., 586 F.2d 1096, 1104-05 (6th Cir.1978). As the jury verdict was not based on any one of Nix's claims, if we can find that a reasonable fact-finder could find for the plaintiff on any one of her three claims, we must uphold the verdict of the jury as to the economic damages. (In order to uphold the punitive damages, we must find for Nix on her retaliatory discharge claim.)
 
 
 11
 It is our opinion that Nix's strongest claim is her charge that United fired her in retaliation for firing a civil rights complaint. United contends that no reasonable fact-finder could conclude, on the basis of the evidence produced at trial, that United discharged Nix because she filed a complaint. In order to prove such a claim, a plaintiff must show that the protected activity (filing a civil rights claim) was a significant factor leading to her discharge. Polk v. Yellow Freight System, Inc., 801 F.2d 190, 199 (6th Cir.1986). United argues that Nix knew that she was in great jeopardy of being fired in the meeting she had scheduled with Wong, leading her to file the complaint in an attempt to shield herself from being fired. Nix acknowledged that she filed a complaint to protect herself as Wong had on more than one occasion told Nix that she would be fired if she did not improve her performance.
 
 
 12
 United argues that Nix went to the meeting with Wong, hoping that the complaint would protect her, and told him that her approach to the job was proper and that she had no intention of changing the way she did her work. The defendant insists that Wong fired Nix only when she demonstrated her unwillingness to accept Wong's direction. United argues that Nix knew when she made these statements that she would be fired, and she filed the claim before the meeting in order to set up the discharge claim.
 
 
 13
 Nix, of course, sees these events differently. She testified that when she told Wong, right at the beginning of the meeting, that she had filed her complaint, he told her "this changes things" and, shortly thereafter, terminated her. Wong admitted at trial that he did not go into the meeting intending to fire Nix. Nix argues that her filing of the complaint was a significant factor in Wong's decision to fire her and that her testimony as to Wong's statements after she told him about the complaint is sufficient evidence for a reasonable jury to have found in favor of Nix.
 
 
 14
 We agree. This issue is one of judging the credibility of Nix versus Wong. Given the troubles that led Nix to file her complaint and the timing of her discharge, a reasonable jury certainly could have believed Nix's description of the events surrounding the discharge and disbelieved Wong when he asserted that he did not fire her because of the civil rights complaint. Indeed, it is the special role of the jury to make such determinations. We therefore affirm the district court's decision denying United's motion for JNOV and uphold the verdict of the jury granting both the economic and punitive damages to Nix.
 
 III
 
 15
 United also argues that, for the reasons stated in its arguments for JNOV, the district court, after weighing all the evidence, should have granted its motion for new trial. On a motion for new trial, a judge should grant the motion if, weighing all the evidence, the verdict is against the clear weight of the evidence. TCP Industries v. Uniroyal, Inc., 661 F.2d 542, 546 (6th Cir.1981). A reviewing court should reverse the decision of the trial judge denying the motion for a new trial only if there is an abuse of discretion. Ibid. For the reasons contained in our discussion concerning the evidence supporting the verdict on the retaliatory discharge claim, we hold that the court did not abuse its discretion in denying the motion for new trial.
 
 
 16
 United also argues that the district court abused its discretion in allowing an excessive jury award to stand. The company argues that an $840,000 award for a 44 year old who is physically capable of working "appears excessive and shocking", and that the verdict "appears" to have been influenced by bias against Wong because he fired someone who had worked 17 years at the company.
 
 
 17
 Despite these objections, we find that the damages were supportable by the evidence. The lost wages and benefits were computed by compiling Nix's lost United wages and benefits and subtracting what she had earned since leaving her United position. Her future earnings were discounted to present value, and the jury awarded less than the plaintiff asked for ($550,000 compared to $726,000) because of anticipated future earnings. The award for anguish, humiliation, and outrage due to the retaliatory discharge was a little more than half of what the plaintiff asked for ($130,000 compared to $250,000) and was supported by the evidence. United gives no specific reasons as to why these amounts are excessive and offers no evidence that the jury award was the product of bias. There is, thus, no reason to say the court abused its discretion in allowing the award.
 
 
 18
 The final argument made by United is that the district court abused its discretion when it allowed testimony by Squelch that Wong, after telling male employees that the company preferred them to wear blue-gray suits, wore a white suit to a meeting. United argues that this testimony was irrelevant as to the issue tried in the case and was an attempt to create a negative impression of Wong. The defendant contends that this irrelevant testimony prejudiced United in that the jury might have believed Wong on key issues if a negative impression of him had not been created by the improper testimony. If improper questions created a false impression that could have affected the outcome of a case, allowing the questions was an abuse of discretion. Minichello v. U.S. Industries, Inc., 756 F.2d 26, 30 (6th Cir.1985).
 
 
 19
 In our opinion, however, the testimony was not irrelevant in that it showed that Wong was not disciplined for violating company standards for dress while he criticized Nix for looking unprofessional. In any event, any error over this minor piece of evidence was harmless. We conclude that the trial court did not abuse its discretion in allowing the testimony. We AFFIRM the district court's denial of United's post-trial motions and uphold the verdict of the jury.