**Jeff McHARGUE and Julia McHargue, Plaintiffs/Appellants,**

**v.**

**STOKES DIVISION OF PENNWALT CORP., Defendant/Appellee.**

**Appeal of CONTINENTAL INSURANCE COMPANY, Cross Claimant/Appellant.**

**Nos. 88–2329, 88–2409.**

United States Court of Appeals, Tenth Circuit.

Aug. 6, 1990.

See also 686 F.Supp. 1428.

Blaine A. Rutenbeck, Denver, Colo., and J. Conard Metcalf of Williams, Trine, Greenstein & Griffith, Boulder, Colo., for plaintiff/appellants.

James A. Clark, Bruce D. Pringle and Darwin Poyfair of Baker & Hostetler, Denver, Colo., for defendant/appellee.

Wendelyn K. Walberg, Kurt E. Walberg of Walberg Law Offices, Denver, Colo., for cross claimant/appellant.

Before BALDOCK and EBEL, Circuit Judges, and SAM, District Judge.*

SAM, District Judge.

This is a products liability case in which plaintiffs Jeff and Julia McHargue and cross-claimant Continental Insurance Company (Continental)[1] appeal from the trial court's denial of the McHargues' motion for a new trial after the jury returned a no cause of action verdict for defendant-appellant Stokes Division of Pennwalt Corporation (Stokes). The McHargues assert the trial court abused its discretion by (1) allowing Stokes to cross-examine the McHargues' expert witness on whether the Occupational Health and Safety Act (OSHA) recognizes American National Standards Institute (ANSI) standards, (2) allowing Stokes' expert to testify regarding the probability the subject accident would occur, and (3) instructing the jury that misuse was a complete defense to the products liability claim. Stokes asserts the trial court erred by denying Stokes' motion for summary judgment or motion for directed verdict.

Our jurisdiction over this diversity case arises under 28 U.S.C. § 1291. We hold there was no abuse of discretion below because (1) Stokes did not cross-examine regarding OSHA for any reason related to liability, but rather, to counter the McHargues' expert's attack on the credibility of ANSI standards; and (2) where strict liability was the only issue submitted, the jury's finding the product was not defective obviated deliberation of the parties' comparative fault.[2] Stokes' assertion concerning denial of its dispositive motions is therefore moot. Accordingly, we affirm.

## I. *Facts*

These facts are relevant to the one issue remaining: the propriety of allowing Stokes to use OSHA standards in cross-examination of the McHargues' expert. Jeff McHargue was employed as a first shift supervisor at Denver Plastics, where he had a duty to turn on the injection molding machines and ensure they were running safely. Stokes manufactured and sold to Denver Plastics a 300–ton horizontal plastic injection molding machine (horizontal machine) called "Blue 300." The machine operates by forcing heated plastic into a mold composed of two platens, one that is stationary and one that moves horizontally to open and close the mold. Hydraulic pressure causes the movable platen to be brought up against the stationary platen, forming a completed mold into which the heated plastic is pumped. After the plastic product is formed, the movable platen returns to its original position and the product is either manually removed or automatically ejected from the mold.

The year before Stokes sold Blue 300 to Denver Plastics, ANSI promulgated standards for safety devices that should be found on horizontal machines. ANSI standard B151.1–1976 (B151.1) requires a front safety gate (equipped with a hydraulic, an electric and a mechanical safety interlock) and a rear safety guard (equipped with an electric interlock). It is undisputed that Blue 300 met ANSI standards, and the question whether it was appropriate to introduce those standards is not on appeal.[3]

Jeff was injured when the platens slammed on his hand as he used his fingers to remove a plastic part stuck in the machinery. The platens shut when another employee inadvertently closed the front gate while Jeff was at the rear trying, without first turning off the machine, to dislodge the plastic part. The safety de-

---

* Honorable David Sam, United States District Judge for the District of Utah.

1. Continental joins on the McHargues' briefs because it seeks to recover workers' compensation payments from Stokes. The appellants will be jointly denominated "the McHargues."

2. Finding no reversible error at trial, we need not reach issues related to the comparative fault of either party. Consequently, we will not dis-

cuss the probability issue because it relates solely to Stokes' fault, or the misuse issue because it relates solely to Jeff McHargue's fault.

3. Although "the issue of manufacturer compliance with industry standards is generally considered ... irrelevant in a strict liability case," *Rexrode v. American Laundry Press Co.,* 674 F.2d 826, 831 (10th Cir.1982), the McHargues did not object below to the relevance of B151.1.

**396**

vices failed to function as a result of an improperly wired timer (which Stokes did not manufacture or sell as part of Blue 300).

The jury returned a verdict for Stokes on the strict liability claim by finding Blue 300 was not defective. This appeal is taken from the trial court's denial of the McHargues' motion for a new trial.

## II. *Discussion*

■ In ruling on a motion for a new trial, the trial judge has broad discretion. *Scholz Homes Inc. v. Wallace*, 590 F.2d 860, 864 (10th Cir.1979). He has the obligation or duty to ensure that justice is done, and, when justice so requires, he has the authority to set aside the jury's verdict. *Seven Provinces Ins. Co. Ltd. v. Commerce & Industry Ins. Co.*, 65 F.R.D. 674, 688 (W.D.Mo.1975). He may do so when he believes the verdict to be against the weight of the evidence or when prejudicial error has entered the record. *Holmes v. Wack*, 464 F.2d 86, 88 (10th Cir.1972).

■ As an affirmative defense, Stokes asserted the safety devices on Blue 300 met B151.1. The McHargues' expert attempted to diminish the credibility of B151.1 by characterizing it as nothing more than a minimum consensus standard.[4] Stokes sought to bolster the credibility of ANSI standards in general by asking the McHargues' expert whether OSHA recognized any national consensus standards other than ANSI standards. The expert replied that, as far as he knew, B151.1 was the only nationally recognized consensus standard for a horizontal machine.

The McHargues contend that the cross-examination improperly affected their common law rights in violation of 29 U.S.C. § 653(b)(4),[5] because "it is error to admit evidence to the effect that a product does not violate OSHA standards." The only supporting authority they cite, *Minichello v. United States Industries*, 756 F.2d 26, 29 (6th Cir.1985), holds that although OSHA regulations might be relevant in a products liability case, they can "never provide a basis for liability." The *Minichello* defendant referred to a specific OSHA regulation as proof that absence of a certain handrail did not make the product unreasonably dangerous. The Sixth Circuit held that such use of an OSHA regulation impermissibly affects the standard of civil liability, because knowledge of a specific OSHA regulation could lead the trier of fact to base its finding regarding product defect on whether the product complies with the regulation. In *National Marine Service, Inc. v. Gulf Oil Co.*, the court held that OSHA regulations may not be used to create civil liability; however, they may be referred to as guidelines for determining standards of care. 433 F.Supp. 913, 919–20 (E.D.La.1977) (citing *Buhler v. Marriott Hotels, Inc.*, 390 F.Supp. 999, 1000 (D.C.La. 1974)).

■ Both *Minichello* and *National Marine* are inapposite to this case because Stokes did not introduce the OSHA standards for any reason related to liability; that is, neither to prove Blue 300 met OSHA regulation nor to set out standards of care. Stokes never referred to a *specific* OSHA regulation; it cross-examined merely to show that OSHA recognized the ANSI standards generally and that no oth-

---

**4.** The McHargues also argue that Stokes' reference to OSHA was improper because OSHA creates safety standards for employers only and Stokes was not Jeff's employer. While that argument might be persuasive had Stokes introduced a specific OSHA regulation as a standard, *cf. Bailey v. V & O Press Co., Inc.*, 770 F.2d 601, 607–08 (1985) (error not to give limiting instruction regarding OSHA regulation when action was not against employer), it is unpersuasive where Stokes merely made a general reference to OSHA in an attempt to enhance the credibility of the ANSI standard, *see, e.g., Fabian v. E.W. Bliss Co.*, 582 F.2d 1257, 1261 (10th Cir.1978) (strict liability claim) ("The proper rule is that

industry standards are not conclusive as to ordinary care in design, but rather are admissible evidence").

**5.** Section 653(b)(4) reads:

Nothing in this chapter shall be construed to supersede or in any manner diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of employment.

er standards existed for horizontal machines,[6] and then only after the McHargues put the credibility of ANSI standards in issue. Stokes' cross-examination was necessary and proper to counter the McHargues' attack on the credibility of the ANSI standards. Moreover, in our view, any error resulting from the cross-examination was harmless.[7] Therefore the trial court did not abuse its broad discretion by allowing Stokes' cross-examination regarding OSHA.

AFFIRMED.

6. The McHargues cite no authority and we are aware of none to support their contention that the standard for civil liability on a strict liability claim would be affected by evidence that OSHA recognizes ANSI standards.

7. The Fifth Circuit reasoned (on facts more prejudicial to the plaintiff than these) that "[a]ssuming the OSHA standards were erroneously admitted, the error was harmless because the OSHA standards were merely cumulative to the almost identical and properly admitted ANSI standards." *Dixon v. International Harvester Co.*, 754 F.2d 573, 582 (5th Cir.1985) (specific OSHA standards admitted in strict liability case).