2019 IL App (1st) 172549

No. 1-17-2549

Third Division
August 7, 2019

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| DALE GILLESPIE and CHRISTINE GILLESPIE, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellants, | ) ) | |
| | ) | No. 13 L 8261 |
| v. | ) ) | |
| | ) | Honorable |
| ROBERT EDMIER, THOMAS EDMIER, | ) | John H. Ehrlich, |
| TRAIL QUEST, INC., and EAST | ) | Judge, presiding. |
| MANUFACTURING CORPORATION, | ) | |
| | ) | |
| Defendants (East Manufacturing | ) | |
| Corporation, Defendant-Appellee). | ) | |

JUSTICE COBBS delivered the judgment of the court, with opinion.
Justices Howse and Ellis concurred in the judgment and opinion.

**OPINION**

¶ 1     Dale and Christine Gillespie appeal the trial court's grant of summary judgment in favor of defendant East Manufacturing Corporation (East Manufacturing). The Gillespies' action against Robert Edmier, Thomas Edmier, Trail Quest, Inc. (Trail Quest), and East Manufacturing alleged that they were strictly liable for Dale Gillespie's injury and that East Manufacturing's negligence caused Dale Gillespie's injury. East Manufacturing sought and was granted summary judgment. For the following reasons, we reverse and remand.

## I. BACKGROUND

The Gillespies' third amended complaint contains four counts against the Edmiers and Trail Quest and another four counts against East Manufacturing. The Gillespies alleged that the Edmiers and Trail Quest are strictly liable for, and acted negligently in, failing to provide safe access, in the form of additional safety measures, to and from the dump trailer on which he was injured. The Gillespies further alleged that East Manufacturing is strictly liable for, and acted negligently in, designing, manufacturing, and selling a defective and unreasonably dangerous product that lacked adequate safety features, failed to warn or instruct consumers about foreseeable dangers from unsafe modifications, and did not undergo product testing for safety. The remaining counts include claims for loss of consortium in relation to the previous counts. The relevant facts from the pleadings and depositions are as follows.

### A. The Dump Trailer Contract

East Manufacturing has been in the business of selling dump trailers for over 40 years averaging sales of 1200 dump trailers each year. The trailer industry is composed of approximately 50 competing companies. The dump trailer at issue is the Genesis II frameless model,[1] which features four cast iron steps on the trailer's front side leading to the top of the trailer in line with the industry standard. The dump trailer also has back side steps. Purchasers have the option of equipping the trailer with a ladder instead of the cast iron steps or a grab handle that would be placed at the top of the trailer. The aluminum rung style ladder would be welded on to the front of the trailer.

Trail Quest is a leasing company dealing in tractors and trailers that has contracts with Barge Terminal Trucking (Barge Terminal). Barge Terminal is a company that transports

---

[1]References to the dump trailer throughout will be to the Genesis II frameless model unless otherwise specified.

landscaping materials and other products in bulk. Both companies are family-owned and operated by Robert, Thomas, and John Edmier.

¶ 7        Robert, acting as the president of Trail Quest, negotiated an order for a dump trailer from Jim Rohr of Ken's Truck Repair. Robert and Rohr discussed the desired features for the trailer, including installation of a tarp that would cover the top of the trailer. Ken's Truck Repair prepared and sent a "specification sheet" to Robert reflecting the agreed upon features of the trailer. Ken's Truck Repair ordered the dump trailer from East Manufacturing and a tarp cover featuring an aluminum cap from another vendor. Ken's Truck Repair installed the tarp cover and the aluminum tarp cap on the dump trailer and delivered it to Trail Quest, which in turn leased the dump trailer to Barge Terminal.

¶ 8                                    B. The Accident

¶ 9        Gillespie had worked for Barge Terminal since 1998 as a truck driver. On February 14, 2012, he was working on the dump trailer leased from Trail Quest. He recalled that the weather was unseasonably warm. The dump trailer had been loaded with mulch for a delivery. Using the front side steps, Gillespie climbed on top of the dump trailer and lowered himself into the trailer in order to rake and level the mulch. On his way up, he noticed that the steps were not dry and that the top surface of the trailer was wet.

¶ 10        After leveling the mulch, he turned to climb down the trailer using the steps. Gillespie crawled to the front of the trailer, positioned his right knee on the aluminum cap, placed his left foot down on the first cast iron step, and attempted to place his right foot on the second step. At this point, his hands slipped off the top of the trailer, and his left foot slipped, causing him to fall off the cast iron stairs. He landed on his feet and felt a sharp pain in his back. He immediately reported his injury to his supervisor, Thomas Edmier, before returning to work. With the assistance of a coworker, Gillespie placed a tarp over the trailer and drove

to Plainfield, Illinois. After they completed unloading the mulch, they returned the trailer to Barge Terminal's office in Ottawa, Illinois. Gillespie preloaded the mulch for the next morning's delivery. He testified that he used the dump trailer's stairs once more with no issues before placing a tarp on the trailer and leaving for the day. However, he did not return to work the next day or any day thereafter and instead initiated the present lawsuit.

¶ 11        Robert Edmier testified that Barge Terminal teaches its truck drivers to maintain three-point contact when climbing in and out of trailers as a safety rule. However, he acknowledged that a truck driver has nothing to hold on to when climbing down the steps besides the tarp or the corner of the dump trailer. He further admitted that if a driver holds on to the tarp while climbing down the steps, that driver would not be compliant with the three-point contact safety rule. Robert believed that installing a grab handle at the top of the dump trailer to offer another point of contact when climbing the steps would cost around $100.

¶ 12                            C. Plaintiff's Expert Deposition Testimony

¶ 13        Gary Hutter, the Gillespies' expert witness, opined that the steps on the dump trailer did not comply with the recommended practices of the Occupational Safety and Health Administration (OSHA), the American National Standards Institute (ANSI), the Federal Motor Carrier Safety Regulations (FMCSR), and the Truck Trailer Manufacturers Association (TTMA). Although Hutter acknowledged that OSHA had not issued a final rule regarding ladders on motor vehicles such as dump trailers, Hutter believed that OSHA standards were applicable to East Manufacturing's duty of providing a safe access way to the dump trailer. He also believed that it was foreseeable that workers would have to climb on top of the dump trailer. Hutter opined that the cast iron steps on the trailer had no platform and were not the proper width. He further opined that the steps did not have the proper distance, did not have side rails, and the spacing between the steps was too large.

Additionally, he noted that a truck driver had no convenient place to hold when climbing up and down the steps. Hutter testified that he was aware of East Manufacturing installing full ladders on their waste trailers, and that a full ladder could be installed on the front of their dump trailers.

¶ 14                    D. East Manufacturing Deposition Testimony

¶ 15      Ed Coffman, the principal design engineer for East Manufacturing, testified that the purpose of the steps on the dump trailer was for drivers to climb up and down the trailer "to inspect the load." He believed it was foreseeable that a driver might use the steps to climb into the dump trailer. He further testified that he was aware that the dump trailers are built to Federal Motor Vehicle Safety Standards, which applies to brakes and lights but he was not aware of any safety standards for ladders. He noted that East Manufacturing was a member of the TTMA. He was not aware of ANSI or OSHA applying to steps or ladders of dump trailers. He did not believe there were any manuals that involved the Genesis II dump trailer. He further testified that he had never seen any of East Manufacturing's dump trailers with a grab handle. He described that East Manufacturing refers to the "bulkhead ladder" as steps and stated that Trail Quest requested a "bulkhead ladder" and did not request a rung style ladder. He stated he did not know how much the rung style ladders cost.

¶ 16      He further testified that East Manufacturing did not have a testing department for the quality of the trailers. He acknowledged that prior to the manufacturing of the trailer at issue that there was an engineering change. The change no longer allowed for a final step any closer than 19 inches to the top of the trailer. He noted that the change was made because "[t]he tarp mechanisms that [East Manufacturing] used, sometimes the tarp overlaps 18 inches down the side, so if [East Manufacturing puts] a step, obviously it's up under the tarp, and then this was to keep it down out of the way. Specifically, on the front, a fabric nose of

cap on a tarp comes down over the front of the trailer approximately 18 inches. So if you have a step there, you can't fasten the tarp."

¶ 17    He testified that the tarp installed on the dump trailer at issue modified the design of the frameless trailer. Because of the location of the tarp the dump trailer lost its three points of contact. Ultimately, the aluminum cap that is placed on the front of the trailer to help seal the tarp removes any means of being able to grab the top edge of the bulkhead. He testified that he had seen that style of aluminum cap installed on East Manufacturing's other trailers prior to the installation of the cap on the subject trailer. East Manufacturing did not provide any information in terms of representations or other documentation to the customer or dealer identifying that if such a tarp were installed, that there would be a change to the body of the trailer.

¶ 18    Charlie Wells, East Manufacturing's vice president of sales and marketing, testified that it is foreseeable that customers may place tarps on a dump trailer after East Manufacturing sells it. Wells further testified that there are different manufacturers of tarps with different configurations so that some tarps have no end caps on the front of the trailer and some end caps vary in shape and form. He was aware of six different manufacturers of tarps.

¶ 19    Andy Grow, one of East Manufacturing's engineers, testified that cast iron steps placed on Genesis II dump trailers had a standard design. He stated that there is no regulation for cast iron steps on dump trailers. He further testified that he has never reviewed the design of the steps or tested the design of the steps to make sure the steps were safe for use. He testified that East Manufacturing has no formal accident review procedure or an investigation procedure, and he was not aware of anyone that has fallen off the steps of East Manufacturing's dump trailers. He stated that East Manufacturing could not speculate on all the different tarp configurations and everything that could happen.

¶ 21       East Manufacturing moved for summary judgment. First, it argued that it was not strictly liable for Dale Gillespie's fall because the dump trailer had no design defect. At the time the trailer left East Manufacturing, there was a rounded edge at the steps that was made for someone to grab when climbing in and out the of trailer. It asserted that the addition of the tarp after it was sold to Trail Quest changed the design of the trailer by removing the top part of the steps that was designed to be used as a grab handle. Second, it argued that it was not negligent because it specifically followed the contract that Ken's Truck Repair ordered from its facilities and its duties cannot extend beyond those in its contract.

¶ 22       In response, the Gillespies argued that East Manufacturing was strictly liable because the cast iron steps were defectively designed as they were too far apart, too narrow, the top clearance was inadequate, and the steps offered nothing to grab on to once an individual reaches the top of the stairs, thus making it difficult and dangerous to transition between steps. The Gillespies proffered evidence that the steps did not conform to design standards and criteria set forth by OHSA, FMCSR, ANSI, and TTMA. The Gillespies further posited that they had presented evidence of a feasible alternative design of a ladder that East Manufacturer had installed on other trailer models. Additionally, the Gillespies argued that the addition of a tarp was a foreseeable modification to the trailer. Next, they contended that East Manufacturing failed to provide instructions, directions, or warnings to purchasers that grab handles were needed if a tarp was installed onto the dump trailer. Lastly, they argued under a negligence theory that East Manufacturing had a nondelegable duty to provide a safe product for all intended users.[2]

---

[2]On appeal, the Gillespies did not challenge the trial court's granting of summary judgment in favor of East Manufacturing on the negligence counts.

¶ 23        The circuit court granted East Manufacturing's motion for summary judgment rejecting the Gillespies' contention that it could have or should have added other safety features based on OSHA requirements or trade group standards. The court ruled that OSHA does not apply to trailers and that industry standards are not mandatory. The court also found that East Manufacturing's trailer met the industry custom and practice because East Manufacturing built the trailer pursuant to the specifications of the purchaser and that the purchaser had the trailer modified by a third party who added the tarp cover and cap. The court further found that the third-party modifications demonstrated that the trailer was not unreasonably dangerous when it left East Manufacturing's control. This appeal followed. Additional pertinent facts will be discussed in the context of the issues raised on appeal.

¶ 24                                    II. ANALYSIS

¶ 25        On appeal, the Gillespies recite a litany of contentions including (1) the tarp cover modifications did not affect the design deficiencies in the trailer steps, (2) a jury could find that a condition other than the aluminum tarp cap contributed to cause Dale Gillespie's fall, (3) East Manufacturing had a readily available safer alternative, (4) the trailer was not custom designed because East Manufacturing selected the steps on the trailer, (5) the postsale modifications to the trailer were foreseeable, (6) the Gillespies established that East Manufacturing owed them a duty under both the consumer-expectation test and the risk-utility test for product liability, and (7) East Manufacturing failed to warn the purchaser that placing a tarp cover over the trailer would render the trailer unreasonably dangerous.

¶ 26        We can summarize the Gillespie's contentions into three main arguments. First, under the theory of strict liability, the steps of the dump trailer were defective and unreasonably dangerous. Second, it was reasonably foreseeable that purchasers of the dump trailer would place tarps over the top of the trailer and therefore East Manufacturing should have installed

a grab handle on the trailer to prevent injury when using the defective and unreasonably dangerous steps. Lastly, East Manufacturing failed to warn of the dangers of placing a tarp over the top of the dump trailer. In light of these claims, the Gillespies argue that the trial court erred when it granted summary judgment because whether the dump trailer was defective and unreasonably dangerous were issues of material fact that precluded summary judgment.

¶ 27    Summary judgment is proper only where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2012). When determining whether a genuine issue of material fact exists, this court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004). We review the circuit court's entry of summary judgment *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

¶ 28                    A. Judicial Admissions

¶ 29    Here on appeal, East Manufacturing argues that a judicial admission made by the Gillespies in response to its amended motion to dismiss, standing alone, entitles it to summary judgment. Noting that the trial court made no mention of the alleged admission as the basis for its grant of summary judgment, East Manufacturing entreats this court to affirm summary judgment on the basis of the Gillespies' alleged judicial admission. We decline.

¶ 30    In support of its argument, East Manufacturing recites the following, which it characterizes as the Gillespies' judicial admission:

"[T]o be clear, plaintiff's negligence counts against East, just like the strict tort counts, pertain to the defective and dangerous condition of the trailer at the time it

left East Manufacturing. All of plaintiff's charging allegations in paragraphs 6 to 9 of both the strict tort counts and negligence counts, respectively, pertain to the conditions and defects of the trailer at the time it was sold by East. (*e.g.* failure to have a rung ladder, failure to provide warnings, failure to have grab handles, failure to have adequate steps, etc.; these are all conditions that existed when the trailer was sold by East.)."

East Manufacturing argues that the above quoted language limited the Gillespies' allegations against it as to the condition of the trailer at the time it left East Manufacturing. It maintains that "because of this judicial admission, the trailer with its grab bar and steps at the front are safe."

¶ 31 Judicial admissions are defined as deliberate, clear, unequivocal statements by a party about a concrete fact within that party's knowledge. *In re Estate of Rennick*, 181 Ill. 2d 395, 406 (1998). The subject statement must not be an inference or unclear summary. *Serrano v. Rotman*, 406 Ill. App. 3d 900, 907 (2011). What constitutes a judicial admission must be decided under the circumstances in each case. *Id.* In addition, before a statement can be held to be an admission, it must be given a meaning consistent with the context in which it is found, and it must be considered in relation to the other testimony and evidence presented. *Id.*

¶ 32 In order to determine whether East Manufacturing's argument has merit, we must first consider the alleged judicial admission in its proper context. For that purpose, we sought review, not only of the Gillespies' response to East Manufacturing's motion to dismiss, but also the motion itself. Despite our best efforts, we have been unable to locate East Manufacturing's motion to dismiss in the record. We have, however, reviewed the Gillespies' amended response to the motion, as well as East Manufacturing's amended reply.

Based on our review, it appears that East Manufacturing's motion sought dismissal of the Gillespies' added negligence claim, alleged against East Manufacturing for the first time in its second amended complaint, as time-barred. In response, the Gillespies argued that the negligence count was not time barred and that, in fact, the count related back to the originally filed "strict counts" against East Manufacturing.

¶ 33 Taken in context, the Gillespies' statements in its response to the motion to dismiss related not the condition of the steps at the time it left East Manufacturing but rather the viability of their negligence claim under the relation back doctrine. We express no opinion with respect to whether the added negligence claim in fact relates back. That issue is not before us. We conclude, however, that the statements to which East Manufacturing point fall far short of being a judicial admission.

¶ 34                              B. Strict Liability: Design Defect

¶ 35 The Gillespies first argue that the dump trailer had design defects such as a lack of a grab handle on the top of the trailer, a lack of a rung style ladder, and inadequate steps in the front of the trailer. East Manufacturing responds that Dale Gillespie's conduct of crawling across the tarp cap to climb down the front side steps of the dump trailer instead of using the back steps should be considered misuse.

¶ 36 To establish a design defect claim for strict products liability, a plaintiff must prove (1) the product had an unreasonably dangerous condition, (2) the dangerous condition existed when the product left the manufacturer's control, and (3) the condition injured the plaintiff. *Mikolajczyk v. Ford Motor Co.*, 231 Ill. 2d 516, 525 (2008). We note that with respect to the third factor, East Manufacturing does not contest that Dale Gillespie was injured. As such, we address the remaining two factors of the Gillespies' design defect claim.

¶ 37                              1. Unreasonably Dangerous Condition

¶ 38    The Gillespies contend that East Manufacturing's cast iron steps installed on the dump trailer were defective and unreasonably dangerous under both the risk-utility and consumer-expectation test.

¶ 39    The determination of whether a product is defective and unreasonably dangerous is ordinarily a question a fact for the jury to consider. *Korando v. Uniroyal Goodrich Tire Co.*, 159 Ill. 2d 335, 344 (1994). When a plaintiff's claim is based on an alleged design defect, the "unreasonably dangerous" element can be proven under the risk-utility test or the consumer-expectation test (*Mikolajczyk*, 231 Ill. 2d at 526-27), the requirements of each which we define more particularly in our analysis going forward.

¶ 40                              a. Risk-Utility Test

¶ 41    The Gillespies argue that they proffered evidence of alternative designs that would have prevented injury and were feasible in terms of cost, practicality, and technological feasibility that demonstrates that East Manufacturing's trailer was unreasonably dangerous due to a design defect.

¶ 42    Under the risk-utility test, we must determine whether, "on balance[,] the benefits of the challenged design outweigh the risk of danger inherent in such designs." (Internal quotation marks omitted.) *Blue v. Environmental Engineering, Inc.*, 215 Ill. 2d 78, 92-93 (2005). Although the risk-utility analysis is ultimately a question of fact, courts must determine as a preliminary matter whether the case is appropriate to submit to a jury. See *Calles v. Scripto-Tokai Corp.*, 224 Ill. 2d 247, 263-66 (2007) (setting forth a nonexhaustive list of factors for the court to consider in a risk-utility analysis). In making this determination, courts may consider (1) the product's utility to the public, (2) the likelihood and the probability of foreseeable injury to the consumer, (3) the manufacturer's ability to eliminate unsafe characteristics without impairing its usefulness or making it too expensive to maintain its

utility, (4) availability and feasibility of alternate designs, and (5) conformity with any applicable industry standards and governmental regulations. *Jablonski v. Ford Motor Co.*, 2011 IL 110096, ¶ 85. In this case, only three of these factors are contested: (1) the dump trailer's conformity with government regulations, (2) conformity with the applicable industry standards, and (3) the availability and feasibility of alternate designs. We focus our analysis on these three.

¶ 43    The Gillespies assert that the trial court erred in granting summary judgment because their expert explained that steps of the dump trailer did not comply with the recommended practices under OSHA, ANSI, FMCSR, and TTMA. East Manufacturing argues that evidence of compliance with OSHA regulations is inapplicable in a product liability action against a manufacturer. East Manufacturing relies heavily on a decision rendered by the Sixth Circuit Court of Appeals, *Minichello v. U.S. Industries, Inc.*, 756 F.2d 26 (6th Cir. 1985), to support its contention. In *Minchello*, the court prohibited the use of evidence of compliance with OSHA regulations in a product liability action. *Id.* at 29.

¶ 44    This court is not bound by federal appellate or district court decisions. *SK Handtool Corp. v. Dresser Industries, Inc.*, 246 Ill. App. 3d 979, 986 (1993). We find instructive our supreme court decision in *Rucker v. Norfolk & Western Ry. Co.*, 77 Ill. 2d 434 (1979). In *Rucker*, the court held that evidence of a product's compliance with government safety standards is relevant and admissible in a product liability case to determine whether the product is defective and whether a defect in the product is reasonable. *Id.* at 439; see also *Moehle v. Chrysler Motors Corp.*, 93 Ill. 2d 299 (1982) (applying the rule established in *Rucker*). In light of *Rucker*, we find that OSHA is a relevant standard in this case.

¶ 45    Hutter's testimony that the steps' spacing, width, distance, and lack of side rails conflict with the OSHA protocol is intended to support his expert opinion that East Manufacturing

designed steps that were defective and unreasonably dangerous. His testimony provides sufficient evidence that a fact finder could consider when determining whether the steps were unreasonably dangerous. Having determined that OSHA is a relevant standard for the jury to consider, we further find that ANSI, FMCSR, and TTMA standards are also relevant for the jury's consideration. See also *Schultz v. Northeast Illinois Regional Commuter R.R. Corp.*, 201 Ill. 2d 260, 298 (2002) (allowing OSHA, ANSI, and other standards and regulations to be admitted into evidence at trial even though the regulations are not binding on the defendant).

¶ 46　　With respect to the second factor, we note that East Manufacturing complied with industry standards. Coffman testified that cast iron steps on dump trailers are standard in the industry and has been the standard since he first joined the trailer industry in 1972.

¶ 47　　Even so, we find persuasive the Gillespies' contention that safer alternatives to the cast iron steps existed. Hutter's testimony indicates that a ladder was available for other models and was also available upon request for the dump trailer. Thus, it was a reasonable alternative to the standard cast iron stairs. Hutter's testimony was corroborated by Coffman and Wells who also testified that East Manufacturing did in fact offer a ladder option, but that it was not the standard.

¶ 48　　On balance, the risk-utility test weighs in favor of the Gillespies. When viewed in a light most favorable to the Gillespies, the deposition testimony of Dale Gillespie, Wells, Grow, Coffman, and Hutter is sufficient to create a genuine issue of material fact as to whether the trailer was unreasonably dangerous.

¶ 49　　　　　　　　　　　　　　b. Consumer-Expectation Test

¶ 50    The Gillespies contend that the fact finder could conclude that a truck driver would reasonably expect steps to be constructed with proper spacing and with side rails. East Manufacturing argues that the trailer was built to the safety specifications of the industry.

¶ 51    Under the consumer-expectation test, a plaintiff may prevail if he shows that the product failed to perform as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner. *Calles*, 224 Ill. 2d at 256. This standard is objective and based on the average, normal, or ordinary expectations of the reasonable person and thus is not dependent upon the subjective expectation of a particular consumer or user. *Id.* at 254 (citing American Law of Products Liability 3d § 17:24, at 17-44 (rev. 1997)).

¶ 52    Here, the purpose of the cast iron steps on the front end of the dump trailer is to allow drivers to climb in and out of the dump trailer. Coffman, East Manufacturing's design engineer, testified that the steps met the industry standards for dump trailers. However the testimony of another East Manufacturing engineer, Andy Grow, revealed that East Manufacturing never tested the design of the steps to make sure the steps were safe. In addition, East Manufacturing had no formal accident review procedure or an investigation procedure for incidents. The mere fact that East Manufacturing's trailer complied with industry standards, where there are no regulations or guidelines that specifically govern the dump trailer industry, is not persuasive enough to overcome the consumer's expectations.

¶ 53    A reasonable truck driver, like Dale Gillespie, would expect that the steps would be properly spaced. The Gillespies' expert opined that the steps did not have the proper toe distance, did not have side rails, and the spacing between the steps was not proper according to the fixed ladder criteria of OSHA and ANSI. As we discussed in the risk-utility test analysis above, we find that OSHA and ANSI standards are relevant for the purposes of determining whether the cast iron steps were defective and unreasonably dangerous.

Accordingly, genuine issues of material fact remain as to whether the cast iron steps were defective and unreasonably dangerous under the consumer-expectation test.

¶ 54                    2. Condition Existed When the Product Left the Manufacturer's Control

¶ 55        Having determined that an issue of material fact exists as to whether the cast iron steps were defective and unreasonably dangerous, we next address the Gillespies' contention that East Manufacturing knew that purchasers would install tarp covers and a tarp cap at the front of the trailer. Specifically, they assert that Trail Quest's need to add a tarp cover and a tarp cap to the dump trailer was reasonably foreseeable and that a truck driver would lose three points of contact once the tarp cover and cap was installed. Given that, they argue that a grab handle should have been installed on the dump trailer before leaving East Manufacturing to give a truck driver the ability to hold on to an apparatus while climbing up and down the front of the dump trailer.

¶ 56        Where an unreasonably dangerous condition is caused by a modification to the product after it leaves the manufacturer's control, the manufacturer is not liable unless the modification was reasonably foreseeable. *Davis v. Pak-Mor Manufacturing Co.*, 284 Ill. App. 3d 214, 220 (1996). "Foreseeability means that which it is objectively reasonable to expect, not merely what might conceivably occur." (Emphasis omitted.) *Winnett v. Winnett*, 57 Ill. 2d 7, 12-13 (1974).

> "If a product is capable of easily being modified by its operator, and if the operator has a known incentive to effect the modification, then it is objectively reasonable for a manufacturer to anticipate the modification. [Citations.] Conversely, if the alteration of the product requires special expertise, or otherwise is not accomplished easily, then it is not objectively reasonable for a defendant to foresee the modification." *Pak-Mor Manufacturing Co.*, 284 Ill. App. 3d at 220.

Questions of foreseeability are usually resolved by the jury, but in certain instances, these questions may be decided as a matter of law where the facts establish that the plaintiff would never be entitled to recovery. *Perez v. Sunbelt Rentals, Inc.*, 2012 IL App (2d) 110382, ¶ 8 (citing *DeArmond v. Hoover Ball & Bearing, Uniloy Division*, 86 Ill. App. 3d 1066, 1071 (1980)). Here, the question is properly one for the jury.

¶ 57     Coffman testified that he had seen the same style of aluminum cap installed on East Manufacturing's other trailers prior to the installation of the cap on the subject trailer. This confirmed that East Manufacturing was aware that dump trailers are modified in this manner. Additionally, Wells's and Grow's testimony acknowledged that it was common in the industry for a tarp and tarp caps to be placed upon dump trailers. Although there may be uncertainty as to which style of tarp and tarp caps might be placed on to the dump trailers, there was no dispute that they were often placed on dump trailers similar to East Manufacturing's dump trailer. See *Pak-Mor Manufacturing Co.*, 284 Ill. App. 3d at 221 (noting that the existence of an industry-wide phenomenon factored into whether a genuine issue of material fact existed about the foreseeability of truck operators altering a control switch on garbage trucks).

¶ 58     Further, Coffman testified that once the tarp was installed, the dump trailer lost its three points of contact, which reduced a truck driver's ability to grab the top edge of the front of the trailer. Given Coffman's testimony, it follows that Dale Gillespie may have struggled maintaining three points of contact after placing the tarp on top of the front of the trailer.

¶ 59     In construing all reasonable inferences from Coffman, Grow, and Wells' deposition testimony in the light most favorable to the Gillespies, we find that a genuine issue of material fact remains as to whether it was foreseeable that purchasers would install tarp covers and caps and whether the presence of a grab handle would be necessary to maintain

three points of contact. Therefore, we find that summary judgment should not have been granted.

¶ 60                                C. Strict Liability: Failure to Warn

¶ 61     The Gillespies further contend that East Manufacturing failed to warn that a grab handle was necessary if a consumer installed a tarp cover. They argue that the lack of a grab handle rendered the trailer unreasonably dangerous and thus East Manufacturing is strictly liable for its failure to warn of that danger.

¶ 62     Under a failure to warn theory, a plaintiff must show that the manufacturer did not disclose an unreasonably dangerous condition or instruct on the proper use of the product as to which the average consumer would not be aware. *Sollami v. Eaton*, 201 Ill. 2d 1, 7 (2002). "A manufacturer has a duty to warn where the product possesses dangerous propensities and there is unequal knowledge with respect to the risk of harm, and the manufacturer, possessed of such knowledge, knows or should know that harm may occur absent a warning." *Id.*

¶ 63     However, there is no duty to warn where the product is not defectively designed or manufactured and where the possibility of injury results from a common propensity of the product that is obvious to the user. *Genaust v. Illinois Power Co.*, 62 Ill. 2d 456, 467 (1976) (citing Restatement (Second) of Torts § 402A cmt. j, at 353 (1965) (noting that a product may be prevented from being considered unreasonably dangerous if it is accompanied by directions or warnings about its proper use; a product that bears an adequate warning "is not in [a] defective condition, nor is it unreasonably dangerous")). The determination of whether a product was in an unreasonably dangerous or defective condition because of the failure to give adequate warnings is ordinarily a question for the jury. *Collins v. Sunnyside Corp.*, 146 Ill. App. 3d 78, 80-81 (1986) (citing *Ebbert v. Vulcan Iron Works, Inc.*, 87 Ill. App. 3d 74, 76 (1980)).

¶ 64    Here, as discussed above, East Manufacturing was aware of the practice of maintaining three-point contact in the truck driving industry when working on a trailer. East Manufacturing acknowledged that by placing a tarp over the front top of the dump trailer, the consumer would not be able to maintain the three-point contact necessary for the consumer's safety. As East Manufacturing was well aware that this problem could occur but did not warn of the potential danger to consumers, we find that summary judgment was improperly granted.

¶ 65    Finally, East Manufacturing claims that this court should affirm summary judgment because Dale Gillespie's conduct in crawling across the tarp cap to climb down the front side steps of the dump trailer instead of using the back steps constitutes misuse. Misuse of a product occurs when it is used for a purpose neither intended nor reasonably foreseeable by the defendant based on an objective standard. *Arellano v. SGL Abrasives*, 246 Ill. App. 3d 1002, 1010 (1993). In the present case, Coffman testified that the purpose of the steps on the dump trailer was for drivers in climbing up and down the trailer "to inspect the load." He further stated that it was foreseeable that a driver might use the steps to climb the dump trailer. Coffman's testimony indicates that Dale Gillespie used the stairs for its intended purpose and that it was reasonably foreseeable for him to climb down the front stairs. Therefore, we reject East Manufacturing's contention of misuse as a basis for affirming summary judgment.

¶ 66                                   III. CONCLUSION

¶ 67    For the reasons stated, we reverse the trial court's grant of East Manufacturing's motion for summary judgment as to the strict liability count and remand for further proceedings.

¶ 68    Reversed and remanded.

No. 1-17-2549

| | |
|---|---|
| **Cite as:** | *Gillespie v. Edmier*, 2019 IL App (1st) 172549 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 13-L-8261; the Hon. John H. Ehrlich, Judge, presiding. |
| **Attorneys for Appellant:** | Michael W. Rathsack, Nicholas J. Faklis, and Michael C. Mead, of Chicago, for appellants. |
| **Attorneys for Appellee:** | Thomas E. Sarikas, of Bryce Downey & Lenkov LLC, of Chicago, for appellee. |