**2020 IL 125262**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

––––––––––––––––

(Docket No. 125262)

DALE GILLESPIE *et al.*, Appellees, v. ROBERT EDMIER *et al.*
(East Manufacturing Corporation, Appellant).

*Opinion filed December 3, 2020.*

JUSTICE KILBRIDE delivered the judgment of the court.

Chief Justice Anne M. Burke and Justice Theis concurred in the judgment and opinion.

Justice Karmeier specially concurred, joined by Justices Garman and Michael J. Burke.

Justice Neville took no part in the decision.

**OPINION**

¶ 1    In this appeal, we address whether the circuit court of Cook County erroneously granted summary judgment under section 2-1005(c) of the Code of Civil Procedure

(735 ILCS 5/2-1005(c) (West 2018)) in favor of defendant manufacturer, East Manufacturing Corporation (East Manufacturing), in a strict liability action brought by plaintiffs, Dale and Christine Gillespie. The appellate court reversed the grant of summary judgment in favor of East Manufacturing and remanded for further proceedings. 2019 IL App (1st) 172549. We allowed East Manufacturing's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Oct. 1, 2019). We now affirm the judgment of the appellate court and remand the cause for further proceedings.

¶ 2                                BACKGROUND

¶ 3        Plaintiff Dale Gillespie worked as a truck driver for Barge Terminal. On February 14, 2012, he was working on a dump trailer manufactured and sold by defendant East Manufacturing and leased by Barge Terminal from defendant Trail Quest, Inc. The dump trailer was loaded with mulch for a delivery. Using the front cast iron side steps, Gillespie climbed on top of the dump trailer and lowered himself into the trailer to rake and level the mulch. After leveling the mulch, he turned to climb down the trailer using the front side steps. Gillespie crawled to the front of the trailer, positioned his right knee on the aluminum cap, placed his left foot down on the first cast iron step, and attempted to place his right foot on the second step. At this point, his hands slid off the top of the trailer, and his left foot slipped, causing him to fall off the cast iron stairs. He landed on his feet and felt a sharp pain in his back. He immediately reported his injury to his supervisor before returning to work.

¶ 4        Dale and his wife Christine Gillespie filed suit against Robert Edmier, Thomas Edmier, and John Edmier (the owners and operators of Barge Terminal); Trail Quest; and East Manufacturing.[1] The Gillespies alleged, *inter alia*, that East Manufacturing is strictly liable for, and acted negligently in, designing, manufacturing, and selling a defective and unreasonably dangerous product. The Gillespies further alleged that the product lacked adequate safety features, that East Manufacturing failed to warn consumers about foreseeable dangers from unsafe modifications, and that the product did not undergo product testing for safety.

---

[1] Only East Manufacturing is a party to this appeal. We therefore limit the facts to the involvement of East Manufacturing and those relevant to this appeal.

¶ 5      In a deposition, the Gillespies' expert, Gary Hutter, opined that the steps on the dump trailer were defective and unreasonably dangerous. Hutter explained that the spacing and width of the steps, as well as the lack of side rails on the dump trailer, did not comply with the recommended practices of the Occupational Safety and Health Administration (OSHA), the American National Standards Institute, the Federal Motor Carrier Safety Regulations, and the Truck Trailer Manufacturers Association.

¶ 6      East Manufacturing moved for summary judgment. The circuit court granted the motion, ruling that OSHA does not apply to trailers and that industry standards are not mandatory. The court also found that East Manufacturing's trailer met the industry custom and practice because East Manufacturing built the trailer pursuant to the specifications of the purchaser and the purchaser had the trailer modified by a third party who added a tarp cover and cap. The court further found that the third-party modifications demonstrated that the trailer was not unreasonably dangerous when it left East Manufacturing's control.

¶ 7      The Gillespies appealed, challenging, *inter alia*, the trial court's grant of summary judgment on their strict liability claim against East Manufacturing.[2] The appellate court reversed the grant of summary judgment in favor of East Manufacturing and remanded for further proceedings. 2019 IL App (1st) 172549. The appellate court reasoned that the deposition testimony of Hutter and others was sufficient to create a genuine issue of material fact as to whether the trailer was unreasonably dangerous.[3] This court allowed East Manufacturing's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Oct. 1, 2019). We also allowed the Illinois Chamber of Commerce, the Truck Trailer Manufactures Association, Inc., and the Illinois Trial Lawyers Association to file *amicus curiae* briefs. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

---

[2]On appeal, the Gillespies did not challenge the trial court's grant of summary judgment in favor of East Manufacturing on the negligence counts.

[3]The appellate court also addressed issues not raised in this appeal.

¶ 8                                        ANALYSIS

¶ 9         This matter comes for our review on the circuit court's grant of summary
judgment in favor of defendant East Manufacturing. Summary judgment is
appropriate if the pleadings, depositions, admissions, and affidavits on file establish
that there is no genuine issue of material fact and that the moving party is entitled
to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2018); *Coleman v.
East Joliet Fire Protection District*, 2016 IL 117952, ¶ 20. When determining
whether a genuine issue of material fact exists, we must construe the pleadings,
depositions, admissions, and affidavits strictly against the movant. *Adams v.
Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004). We review a motion for
summary judgment in the light most favorable to the nonmoving party. *Coleman*,
2016 IL 117952, ¶ 20. A circuit court's order granting summary judgment is
reviewed *de novo*. *Cohen v. Chicago Park District*, 2017 IL 121800, ¶ 17.

¶ 10        East Manufacturing argues that the trial court properly granted summary
judgment in its favor on the Gillespies' strict liability claim. It is well established
that, to recover in a strict product liability action, a plaintiff must plead and prove
that (1) the injury complained of resulted from a condition of the product, (2) the
condition was unreasonably dangerous, and (3) the condition existed at the time the
product left the manufacturer's control. *Mikolajczyk v. Ford Motor Co.*, 231 Ill. 2d
516, 525 (2008). This court recognized in *Mikolajczyk*, that

        "[a] product may be found to be unreasonably dangerous based on proof of any
        one of three conditions: a physical defect in the product itself, a defect in the
        product's design, or a failure of the manufacturer to warn of the danger or to
        instruct on the proper use of the product." *Mikolajczyk*, 231 Ill. 2d at 525.

¶ 11        A showing that the product is unreasonably dangerous in a strict liability claim,
based on an alleged design defect, may be proved "by evidence of the availability
and feasibility of alternate designs at the time of its manufacture, or that the design
used did not conform with the design standards of the industry, design guidelines
provided by an authoritative voluntary association, or design criteria set by
legislation or governmental regulation." *Anderson v. Hyster Co.*, 74 Ill. 2d 364, 368
(1979). A product may be found unreasonably dangerous based on a design defect
when the plaintiff presents evidence of an alternative design that is "economical,
practical and effective." *Kerns v. Engelke*, 76 Ill. 2d 154, 162-63 (1979). Evidence

- 4 -

of an alternative design introduces the question of feasibility because a manufacturer's product cannot be faulted when safer alternatives are not feasible. *Mikolajczyk*, 231 Ill. 2d at 526. Plaintiffs may demonstrate that a product was defectively designed by presenting evidence that the product fails to satisfy the "consumer-expectation test" or the "risk-utility test." *Calles v. Scripto-Tokai Corp.*, 224 Ill. 2d 247, 255 (2007). The determination of whether a product is defective and unreasonably dangerous is ordinarily a question of fact for the jury to consider. *Korando v. Uniroyal Goodrich Tire Co.*, 159 Ill. 2d 335, 344 (1994).

¶ 12    On appeal before this court, East Manufacturing submits that summary judgment was proper under the risk-utility test. Under the risk-utility test, the utility of the design must be weighed against the risk of harm created, and if the likelihood and gravity of the harm outweigh the benefits and utilities of the product, the product is unreasonably dangerous. *Calles*, 224 Ill. 2d at 259. Courts may consider numerous factors, including the availability and feasibility of alternate designs at the time of manufacture or whether the design conformed with design standards of the industry, design guidelines provided by an authoritative voluntary association, or design criteria set by legislation or government regulation. *Calles*, 224 Ill. 2d at 263-64. Other factors that may also be relevant include

> " '(1) the appearance and aesthetic attractiveness of the product; (2) its utility for multiple uses; (3) the convenience and extent of its use, especially in light of the period of time it could be used without harm resulting from the product; and (4) the collateral safety of a feature other than the one that harmed the plaintiff.' " *Calles*, 224 Ill. 2d at 265-66 (quoting American Law of Products Liability 3d § 28:19, at 28-30 through 28-31 (1997)).

¶ 13    East Manufacturing argues that the appellate court erroneously reversed the circuit court's grant of summary judgment in its favor because government regulations and industry standards not applicable to it or the dump trailer are irrelevant and that the appellate court erred in considering those standards in this case. The Gillespies counter that the government regulations and industry standards addressing the dimension and spacing of steps and ladders served as a basis for their expert's opinion and that the issue in this appeal is limited to expert Hutter's use of such standards in forming his opinion and, if proper, created a genuine issue of material fact, precluding summary judgment.

¶ 14    We agree with the Gillespies. Whether OSHA and the other protocols mentioned by Hutter during his deposition testimony are also admissible in evidence is not the touchstone for this appeal. Hutter used these sources solely to form his expert opinion. The sources were not admitted as substantive evidence. That is a separate issue that is not the subject of this appeal. Rather, the issue here is whether experts may rely on such data for the limited purpose of explaining the basis for the expert's opinion.

¶ 15    This court has already addressed that question. Specifically, this court approved the use of OSHA standards by expert witnesses in *Schultz v. Northeast Illinois Regional Commuter R.R. Corp.*, 201 Ill. 2d 260 (2002). In *Schultz*, one of the issues addressed by this court was whether the trial court erred in allowing the plaintiff's expert to testify that various government regulations, such as OSHA, were evidence of the standard of care in an action brought under the federal Employers' Liability Act (45 U.S.C.A. § 51 *et seq.* (1994)). The defendant in *Schultz* argued that plaintiff's expert should not have been allowed to testify that OSHA and other safety standards indicated a standard of care because they are inapplicable to the retaining wall where the plaintiff was injured. This court concluded that "an expert must be allowed to testify regarding the basis for his opinion [citations] because an expert's opinion is only as valid as the reasons that underlie it [citation]." *Schultz*, 201 Ill. 2d at 298-99. Accordingly, this court determined that the expert's testimony in *Schultz* "was simply intended to support his expert opinion that defendant was negligent." *Schultz*, 201 Ill. 2d at 299.

¶ 16    In this case, Hutter's deposition testimony, that the spacing and width of the steps and the lack of side rails conflict with OSHA protocol and other industry guidelines, was intended to support his expert opinion that East Manufacturing designed steps that were defective and unreasonably dangerous. Viewed in a light most favorable to the Gillespies, as the nonmovants, Hutter's deposition testimony was sufficient to create a genuine issue of material fact as to whether the dump trailer was unreasonably dangerous. Accordingly, we agree with the appellate court that the circuit court erroneously granted summary judgment in favor of East Manufacturing.

¶ 17    East Manufacturing also argues that summary judgment on the strict liability count was proper under the consumer expectations test and under a failure to warn

theory. We need not address the remaining arguments raised on appeal because we have already determined that the circuit court erroneously granted summary judgment in favor of East Manufacturing on the Gillespies' strict liability claim. See *Hertz Corp. v. City of Chicago*, 2017 IL 119945, ¶ 31. We therefore affirm the judgment of the appellate court and remand the cause to the circuit court of Cook County for further proceedings.

¶ 18                                  CONCLUSION

¶ 19     For the foregoing reasons, we affirm the judgment of the appellate court that reversed the circuit court's order granting summary judgment in favor of defendant, East Manufacturing Corporation. We remand the cause to the circuit court of Cook County for further proceedings consistent with this opinion.

¶ 20     Appellate court judgment affirmed.

¶ 21     Circuit court judgment reversed.

¶ 22     Cause remanded.

¶ 23     JUSTICE KARMEIER, specially concurring:

¶ 24     While I find the lead opinion reaches the correct conclusion in this case, it misapprehends the legal analysis required here, leaving an incorrect impression that experts may always rely on regulations and standards as a basis for their opinions and must be allowed to testify to such evidence at trial to explain the basis for their opinion in every circumstance. *Supra* ¶ 15. As a result, the opinion could be misconstrued to impermissibly undermine the trial judge's role as a gatekeeper. *Decker v. Libell*, 193 Ill. 2d 250, 254 (2000) (trial judge has the role of gatekeeper, barring testimony that is not sufficiently relevant or reliable to be admitted into evidence). I therefore write separately to clarify the relevant legal principles.

¶ 25     As a preliminary matter, I note that defendant argued in this court that plaintiffs forfeited the argument that the criteria set forth by OSHA, the American National Standards Institute (ANSI), the Federal Motor Carrier Safety Regulations

(FMCSR), and the Truck Trailer Manufacturers Association (TTMA) were admissible to explain the basis for Hutter's expert opinion, because plaintiffs had argued in the lower courts that those standards, regulations, and practices were substantively admissible. The lead opinion does not acknowledge or address defendant's forfeiture argument. The lead opinion simply states that the issue before this court is whether an expert may rely upon such standards, regulations, and practices to explain the basis for the expert's opinion.

¶ 26 It well settled that this court may ignore forfeiture "in the interests of achieving a just result and maintaining a sound and uniform body of precedent." *Jackson v. Board of Election Commissioners*, 2012 IL 111928, ¶ 33. In addition, the appellate court arguably suggested that the standards and regulations at issue were admissible to support Hutter's expert opinion, in addition to being substantively admissible. See 2019 IL App (1st) 172549, ¶ 45. Nonetheless, I believe the lead opinion should have acknowledged the argument, as defendant is correct that plaintiffs' argument in the lower courts and the decisions of the lower courts concerned the substantive admissibility of the OSHA regulations and the FMCSR, ANSI, and TTMA standards and practices. Plaintiffs have now essentially abandoned that argument in this court.

¶ 27 After noting that this court is not addressing whether the standards at issue are admissible as substantive evidence, the lead opinion finds the controlling case is *Schultz*—which held OSHA standards are admissible and may be relied upon by an expert to determine defendant-railroad's standard of care with respect to installing a guardrail on a retaining wall, off which plaintiff fell. *Schultz v. Northeast Illinois Regional Commuter R.R. Corp.*, 201 Ill. 2d 260, 296-98 (2002). I do not disagree with the *Schultz* holding or that an expert may rely upon and testify to such standards in explaining the basis of the opinion when appropriate. However, the lead opinion's bare citation to *Schultz*—while not incorrect—is misleading without clarification.

¶ 28 In *Wilson v. Clark*, this court adopted Federal Rules of Evidence 703 and 705, which regard the basis for an expert's opinion and disclosure of the expert's basis at trial. *Wilson v. Clark*, 84 Ill. 2d 186, 196 (1981). In *Wilson*, plaintiff's expert provided his opinion to a hypothetical question based upon medical records that were improperly admitted into evidence without proper foundation. *Id.* at 191-92.

While this court found reversible error[4] (*id.* at 195-96), it clarified that, under the newly adopted rules, admission of the medical records was unnecessary for the expert to testify to his opinion, as experts may rely on data and facts not otherwise admissible when that information is of a type that is reliable (*id.* at 192-93).

¶ 29     Importantly, this court has explained that courts need not allow an expert to testify to the basis of his opinion. *City of Chicago v. Anthony*, 136 Ill. 2d 169, 185 (1990) (trial judge need not allow the expert to recite inadmissible evidence to explain the basis of the opinion when, under Federal Rule of Evidence 703, adopted by this court in *Wilson*, its probative value in explaining the expert's opinion pales beside its likely prejudicial impact or its tendency to create confusion); *People v. Anderson*, 113 Ill. 2d 1, 12 (1986) (same). Consequently, the information experts may rely upon as the basis for their opinion is much broader than that allowed to come before a trier of fact. See *Anthony*, 136 Ill. 2d at 186 ("If another rule of law applicable to the case excludes the information sought to be relied upon by the expert, the information may not be permitted to come before the jury under the guise of a basis for the opinion of the expert."); Ill. R. Evid. 703 (eff. Jan.1, 2011) (facts and data need not be admissible for an expert to rely upon them in averring an opinion); *Wilson*, 84 Ill. 2d at 192. The trial court remains the gatekeeper of information and must determine whether the information upon which the expert bases his opinion is of a type that is reliable. *Anthony*, 136 Ill. 2d at 186 (citing *In re "Agent Orange" Product Liability Litigation*, 611 F. Supp. 1223, 1245 (E.D.N.Y. 1985)); *Decker*, 193 Ill. 2d at 254.

¶ 30     Under this standard, data and facts need to be reliable and probative of the particular facts in the case. *Anthony*, 136 Ill. 2d at 185-86; *Decker*, 193 Ill. 2d at 254; *Ruffiner v. Material Service Corp.*, 116 Ill. 2d 53, 59-60 (1987); *In re "Agent Orange" Product Liability Litigation*, 611 F. Supp. at 1245 ("If the underlying data are so lacking in probative force and reliability that no reasonable expert could base an opinion on them, an opinion which rests entirely upon them must be excluded."). As such, a court's determination should be made on a case-by-case basis. *Anthony*, 136 Ill. 2d at 185. Therefore, while regulations and standards are trustworthy

---

[4]This court determined it was unfair to hold the plaintiff in *Wilson* to its pronounced rule, except on retrial, because the adoption of Federal Rules of Evidence 703 and 705 was a change in law. *Wilson*, 84 Ill. 2d at 195-96. Therefore, plaintiff had no notice that the expert's opinion to a hypothetical question could be based on inadmissible records. *Id.*

information upon which an expert's opinion may be based, they are not always an appropriate basis for an expert's opinion. Compare *Schultz*, 201 Ill. 2d at 296-98 (OSHA standards were relevant to standard of care regarding retaining wall where expert explained standards indicate that change in elevation was hazardous and required a handrail, even though standards were admissible as evidence of standard of care, although the standards were not binding on defendant), with *Ruffiner*, 116 Ill. 2d at 58-59 (foundation to admit ANSI standards was insufficient where expert provided only common goal of safety to establish relevance of the standards).

¶ 31    The record shows that Hutter provided a factual basis for his opinion and did not rely solely on OSHA standards. His testimony included some conclusory statements and relied heavily on standards, but he provided the factual basis of the spacing and width of the stepladder on the dump trailer along with the absence of a handle and provided measurements that would have been reasonably safe. See *Ruffiner*, 116 Ill. 2d at 60 ("Although the plaintiff's expert relied heavily on the ANSI standards, which we have found to have been improperly admitted here, the basis for his opinion was directed at what he perceived to be the inadequate depth and width of the ladders, matters that could sustain a judgment for the plaintiff."). Hutter referenced pictures of similar trailers in the industry, examples of safe ladders purchased by defendant, sales literature, and his extensive experience. He also relied upon standards other than OSHA, to which the trial court failed to make any findings other than stating that they were not mandatory. See *Schultz*, 201 Ill. 2d at 296-98 (OSHA standards were relevant to standard of care regarding retaining wall although the standards were not binding on defendant).

¶ 32    Based on this record, Hutter provided a sufficient basis for his opinion, which raised a genuine issue of material fact as to whether the steps were unreasonably dangerous. Thus, the trial court erred in granting summary judgment.

¶ 33    Although I do not determine whether any standard raised by Hutter is sufficiently reliable to form the basis for his expert opinion, these issues may arise again in the course of the proceedings below. Note, Hutter not only cited OSHA regulations and standards to support his opinion but provided an explanation— other than safety—as to why the standards were relevant although not explicitly applicable to dump trailers. Moreover, the experts in this case also dispute whether OSHA is in fact applicable to the stepladder when this trailer is parked for loading

and unloading. Accordingly, I reiterate that the determination of the admissibility of any standard to explain the basis of an expert's opinion and the reliability of the basis of an expert's opinion should be made on the facts of the case pursuant to the above principles and precedent of this court.

¶ 34 Lastly, unlike the lead opinion, I would address plaintiff's failure-to-warn claim although summary judgment has been found improper under the risk-utility test. Presumably, the lead opinion took a contrary position because the core proof essential to survive summary judgment for plaintiff's design defect claim under both the risk-utility and consumer-expectation tests, as well as his failure-to-warn claim, was the same: Hutter's opinion on the dangerousness of the stepladder and defendant's knowledge that the user would install a tarp system on its trailers. I do not necessarily disagree with its position with respect to the consumer-expectation test,[5] because the risk-utility test and consumer-expectation tests are methods of proof for the same liability and depend on essentially the same facts. *Mikolajczyk v. Ford Motor Co.*, 231 Ill. 2d 516, 548 (2008). However, it could have noted this.

¶ 35 On the other hand, the failure to warn claim is a separate method of liability that warrants a separate analysis. *Id.* In their failure-to-warn claim, plaintiffs assert that defendant should have warned of the potential dangers when a user installs a tarp on its dump trailer. To impose strict liability for the failure to warn, the manufacturer must have known or should have known of the danger that caused the injury and failed to warn plaintiffs of that danger. *Woodill v. Parke Davis & Co.*, 79 Ill. 2d 26, 35 (1980).

¶ 36 Here, it is undisputed that defendant failed to provide any warning regarding the dump trailer. The record reflects that defendant's own employee testified that

---

[5]East Manufacturing also asserts plaintiffs forfeited any argument under the consumer-expectation test because they failed to raise it in the trial court. Forfeiture is an admonition to the parties, and not a limitation on the court. *People v. McCarty*, 223 Ill. 2d 109, 142 (2006). Nevertheless, plaintiffs raised the consumer-expectation test in their response to defendant's summary judgment motion. While plaintiffs did not clearly delineate what arguments and facts were made to support liability under the risk-utility test and which were made to support liability under the consumer-expectation test, Hutter explained how use of the ladder was unsafe. In light of the requirements under the consumer-expectation test (*Mikolajczyk v. Ford Motor Co.*, 231 Ill. 2d 516, 554 (2008) ("whether the product is unsafe when put to a use that is reasonably foreseeable considering its nature and function. [Citation.] No evidence of ordinary consumer expectations is required, because the members of the jury may rely on their own experiences to determine what an ordinary consumer would expect.")), this is sufficient to preserve this issue.

defendant sometimes installs tarp systems on its trailers and that defendant knew third parties installed a tarp system on its trailers. Based on this fact, Hutter opined that defendant should have warned consumers to also install a handle for safety when a user installed a tarp system. Accordingly, plaintiffs raised a genuine issue of whether the defendant should have provided a warning, and summary judgment was improper.

¶ 37        For these reasons, I specially concur.

¶ 38        JUSTICES GARMAN and MICHAEL J. BURKE join in this special concurrence.

¶ 39        JUSTICE NEVILLE took no part in the consideration or decision of this case.