2022 IL App (1st) 210439

SIXTH DIVISION
May 6, 2022

No. 1-21-0439

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| SUSAN CHISUM, as Special Representative of the Estate of Robert Chisum, deceased, | ) ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellant, | ) ) | Cook County |
| v. | ) ) | No. 18 L 7216 |
| BRIAN J. MCKEEN and MCKEEN &ASSOCIATES, P.C., | ) ) ) | The Honorable Gerald V. Cleary |
| Defendants-Appellees. | ) ) ) | Judge, presiding. |

PRESIDING JUSTICE PIERCE delivered the judgment of the court.
Justices Mikva and Oden Johnson concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm the circuit court's entry of summary judgment in favor of defendants.

¶ 2    Plaintiff, Susan Chisum, as the special representative of her deceased husband Robert Chisum's estate, appeals from the circuit court's entry of summary judgment in favor of defendants, Brian J. McKeen and McKeen & Associates, P.C., in this legal malpractice action. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4                          A. The Underlying Wrongful Death Action

¶ 5     The following allegations are contained in plaintiff's amended complaint, which is the operative complaint on appeal.

¶ 6     Robert Chisum had a medical history of atrial fibrillation for which he received the blood thinner Coumadin. On February 25, 2008, Robert fell and hit his head while at a car dealership.[1] He was taken to Highland Park Hospital where he received care from Dr. Ciro L. Iandoli. A computed tomography (CT) scan was reportedly negative. His INR—international normalized ratio—was 3.9, which was above the accepted range for a patient on Coumadin therapy. Robert was diagnosed with a concussion and was discharged from Highland Park Hospital on February 25, 2008. On February 27, 2008, Robert experienced nausea and vomiting, and had difficulty speaking. He was found unresponsive and was taken to Highland Park Hospital, where he was then transferred to Evanston Hospital. A CT scan at Evanston Hospital showed a transtentorial and subfalcine herniation, midline shift, and a large subdural hematoma. On February 28, 2008, Robert was pronounced dead.

¶ 7     Plaintiff retained defendants—along with Robert Baizer and his law firm, Baizer, Kolar & Lewis[2]—to represent the estate in prosecuting wrongful death and survival claims against Highland Park Hospital and Dr. Iandoli (the wrongful death defendants). Defendants filed a complaint on the estate's behalf alleging that the wrongful death defendants breached their duties of care by failing to obtain or appreciate a history of Robert's Coumadin therapy; failing to appreciate Robert's elevated INR level; failing to recognize Robert's increased risk of intercranial

---

[1]The dealership was not named as a defendant in any litigation, and the operative complaint on appeal does not raise any issue about defendants' failure to name the dealership as a defendant.

[2]Baizer and his law firm were named as defendants in plaintiff's initial malpractice complaint but were not named in the amended complaint. They are not parties to this appeal.

hemorrhage after a head trauma; failing to discontinue Coumadin in order to decrease Robert's INR level; failing to reverse the Coumadin's anticoagulation effects; failing to admit Robert for close monitoring; failing to consult with or refer to Robert's primary care physician; failing to provide appropriate discharge instructions; failing to advise Robert to follow up with his primary care physician; and committing other negligent acts.

¶ 8      Defendants told plaintiff that the wrongful death claims had a settlement value of $2 million. According to plaintiff, however, defendants failed to prosecute the matter in accordance with the standard of care. Specifically, defendants (1) failed to depose a Highland Park Hospital doctor who told plaintiff and her daughter that Robert suffered a Coumadin induced stroke; (2) failed to refute deposition testimony in which Robert's physicians testified that Robert had complained of head and neck pain prior to the February 25, 2008; (3) disclosed an expert's report that contained improper assumptions regarding Robert's income, estimates of that income, and the length of Robert's career; and (4) pressured plaintiff into settling the estate's claims at a mediation. During the mediation, plaintiff "came to an understanding" that defendants were unprepared to try the estate's claims to a verdict. On October 30, 2012, plaintiff, "feeling like she had no other option," settled the estate's claims against the wrongful death defendants for $650,000.

¶ 9                          B. Plaintiff's Professional Negligence Claim

¶ 10      In 2014, plaintiff filed a legal malpractice claim against defendants, as well as Baizer and Baizer, Kolar & Lewis, but voluntarily dismissed her complaint with leave to refile. Plaintiff timely refiled this action and filed the operative, amended complaint asserting a single claim of professional negligence against defendants based on the following assertions. An attorney client relationship existed between her and defendants, and defendants had a duty to act as reasonably competent attorneys would have under the circumstances. Defendants breached the standard of

care by (1) failing to adequately conduct discovery and prepare for trial; (2) failing to advise plaintiff that the settlement amount was substantially less than could have been recovered by counsel acting within the standard of care; (3) failing to explain the risks and benefits associated with settling the claims; (4) placing defendants' interests before plaintiff's interests by urging a settlement for less than plaintiff's damages; and (5) failing to communicate with plaintiff in accord with Rule 1.4 of the Rules of Professional Conduct (Ill. R. Prof'l Conduct (2010) R. 1.4 (eff. Jan. 1, 2010)). But for defendants' negligent conduct, plaintiff would have retained other counsel who would have pursued claims against all available defendants, adequately prepared and prosecuted the wrongful death claims, and recovered more than the settlement amount. As for damages, the settlement amount was less than she would have obtained by counsel complying with the standard of care. She further asserted that, due to defendants' negligence, defendants' legal services "were rendered valueless, requiring the disgorgement of any and all legal fees previously paid and the withdrawal of any and all future fee requests from [defendants]."

¶ 11    Defendants answered the complaint and the parties engaged in discovery, including the taking of numerous depositions. Plaintiff disclosed Thomas Watkins as a Supreme Court Rule 213(f)(3) controlled witness and disclosed his opinions. Watkins was an attorney licensed in Texas. He had no medical training and would not offer any medical opinions, nor would he offer any opinions regarding the merits of the medical malpractice action. Instead, his opinions were limited to the issue of "fee forfeiture." He had never worked on a case in Illinois and had never served as an expert in any case in Illinois. Watkins did not prepare any written reports. In Watkins's opinion—which he disclosed in writing and testified to at his deposition—defendants' delays in handling the preparation of the case reduced its settlement value. Specifically, during the wrongful death litigation, defendants allowed the wrongful death claims to be dismissed for want of

4

prosecution (DWP)—which was vacated without objection within three weeks of its entry—and sought a trial continuance, which reduced the value of the claims. Defendants made misrepresentations and acted inappropriately by incorrectly telling plaintiff that, if she did not settle at the mediation, she would have to pay expenses and defendants would be bound by their fiduciary duties to seek her removal as executor of Robert's estate. Finally, defendants breached their fiduciary duties by (1) paying "intense attention to getting the fee in [*sic*] and trying to get their client to sign the releases," and saying they would sign the releases for her if she refused to sign; and (2) failing to inform her that she "had a weak or a non-winnable case until the mediation," and by claiming the case "was weak or unwinnable once there was sufficient money offered to produce a significant fee to [defendants]." The bases for his opinions were various pleadings and discovery documents, including written discovery and deposition transcripts. Watkins stated he was qualified to render such opinions based on his "fifty years of experience trying lawsuits."

¶ 12                                     C. Summary Judgment Proceedings

¶ 13    Defendants moved for summary judgment and made the following arguments. First, plaintiff could not pursue an equitable remedy—either disgorgement or fee forfeiture—because "[a] reduction of attorney *** fees imposed solely as a sanction for unprofessional conduct ***, would constitute an impermissible infringement on the exclusive power of the supreme court, acting through the ARDC, to adjudicate attorney disciplinary matters." *Reed Yates Farms, Inc. v. Yates*, 172 Ill. App. 3d 519, 530 (1988). Plaintiff was limited to pursuing a legal remedy in the form of a professional negligence case. Defendants were entitled to fees for their work in the wrongful death action. Plaintiff did not present any quantitative evidence showing that the alleged professional negligence reduced the value of the services provided by defendants to plaintiff.

Further, the circuit court approved the settlement in the wrongful death action and found defendants' fees fair and reasonable.

¶ 14    Second, plaintiff failed to establish a *prima facie* case of professional negligence. Plaintiff alleged that defendants were negligent by (1) failing to contradict a note in Robert's chart, dated February 27, 2008, indicating Robert complained of a head and neck injury; (2) failing to depose an unidentified doctor who would have provided helpful testimony; (3) failing to name plaintiff's psychiatrist as a witness; (4) requesting a trial continuance and allowing for the entry of a DWP order; and (5) coercing plaintiff into settling the case based on misrepresentations at the mediation. Plaintiff could not show that the doctor who authored the February 27, 2008, note would have disavowed the note through any efforts by defendants. Also, there was nothing in the record to contradict McKeen's deposition testimony explaining that the decision to not challenge the substance of the note was a tactical decision based on his experience that jurors put "tremendous credence" in medical records, the note was consistent with Robert's symptoms, and ultimately the issue would have been a credibility contest between plaintiff—who was not present when Robert purportedly made the statement documented in the note—and the physician. Further, plaintiff's claim that there was an unidentified doctor who spoke with plaintiff and who would have provided helpful testimony was pure speculation, and plaintiff did not present any evidence or expert testimony that the failure to depose the doctor caused any injury. Plaintiff failed to present any evidence that defendants' failure to identify plaintiff's psychiatrist as a witness caused any injury, and McKeen testified at his deposition that calling plaintiff's psychiatrist as a witness to support damages would have been problematic, as it would have affected plaintiff's credibility. Finally, plaintiff's claims that defendants were negligent by allowing for the entry of a DWP order and seeking a trial continuance were "ridiculous," as the DWP order was quickly vacated—and was

due a docketing error by attorneys who had been dismissed as defendants from the case—and requests for trial continuances were commonplace in Cook County.

¶ 15    Third, plaintiff presented no evidence to support any claim that she was coerced into settling the wrongful death claims. Plaintiff did not identify any instances of coercion; instead, the record demonstrated that defendants advised plaintiff about the weaknesses in her case, her duties to the estate and her daughter, and the financial risks of continuing the case. Fourth, plaintiff presented no evidence tending to show she settled the wrongful death claims for less than could have been expected. She claimed defendants told her the case had a settlement value of $2 million, but there was no evidence that defendants guaranteed she would recover that amount, and she herself acknowledged that, had the claims gone to trial, she could have gotten nothing. Defendants also argued that plaintiff was estopped from maintaining her claims because she executed various settlement agreements and approved the distribution of the settlement proceeds, and that she lacked standing to pursue her claims because the claims were for the benefit of the estate, which had not been reopened, and she was no longer the special administrator.

¶ 16    In response, plaintiff argued there were genuine issues of material fact precluding the entry of summary judgment in defendants' favor. Watkins opined that defendants owed plaintiff duties and that they breached those duties, and it was for a jury to decide whether any tactical decisions defendants made were breaches of the standard of care. On the issue of proximate cause, there was evidence that plaintiff accepted a "compromised" settlement based on defendants' advice. Further, Watkins testified that defendants failed to properly prepare the case and missed a deadline resulting a DWP order that diminished the settlement value of the claims, which created a genuine issue of material fact on the issue of causation. She also argued that the question of damages was for the

jury to decide, as Watkins testified that, in his experience, DWP orders always damaged the value of a case.

¶ 17    Further, plaintiff argued that she was not required to prove she was entitled to a larger settlement to overcome summary judgment because her burden of showing that she would have secured a different outcome in the wrongful death action needed to be satisfied at trial. Plaintiff asserted that she could seek disgorgement as a remedy in her professional negligence action.

¶ 18    On March 22, 2021, the circuit court entered a written order entering summary judgment in favor of defendants and against plaintiff. The circuit court found (1) plaintiff failed to submit any expert testimony establishing that defendants' failure to depose an unidentified doctor and disclose plaintiff's psychiatrist as a witness amounted to breach of the standard of care; (2) Watkins's testimony that the DWP order and request for a trial continuance reduced the settlement value of the wrongful death claims and amounted to a breach of the standard of care was "speculative, baseless and lacks foundation;" and (3) plaintiff failed to identify any genuine issue of material fact "that the plaintiff suffered injury as a proximate cause [*sic*] of the breach of the duty of care."

¶ 19    On April 19, 2021, plaintiff filed a timely notice of appeal.

¶ 20                                    II. JURISDICTION

¶ 21    The circuit court entered summary judgment in favor of defendants on March 22, 2021, which was a final judgment disposing of all of plaintiff's claims. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994). Plaintiff filed her notice of appeal on April 19, 2021, which was within 30 days of the circuit court's final judgment. Ill. S. Ct. R. 303(a) (eff. July 1, 2017). Plaintiff's notice of appeal was timely, and we have jurisdiction over plaintiff's appeal.

¶ 22                                      III. ANALYSIS

¶ 23     On appeal, plaintiff argues the circuit court erred by entering summary judgment in favor of defendants. She asserts that (1) she presented adequate evidence establishing that defendants breached the standard of care; (2) her damages were not speculative; (3) there was a genuine issue of material fact as to actual damages; and (4) plaintiff did suffer damages. We address these issues in turn.

¶ 24     Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2020). "The purpose of summary judgment is not to try an issue of fact but to determine whether one exists." *Monson v. City of Danville*, 2018 IL 122486, ¶ 12."A genuine issue of material fact precluding summary judgment exists where the material facts are disputed or, if the material facts are undisputed, reasonable persons might draw different inferences from the undisputed facts." *Lewis v. Lead Industries Ass'n*, 2020 IL 124107, ¶ 15. If the plaintiff fails to establish any element of the cause of action, summary judgment for the defendant is appropriate. *Id.* At summary judgment, the pleadings, depositions, admissions, and affidavits are construed strictly against the moving party and are viewed in the light most favorable to the nonmoving party. *Gillespie v. Edmier*, 2020 IL 125262, ¶ 9. *Id.* Our review is *de novo*. *Id.*

¶ 25     To prevail on a legal malpractice claim, plaintiff needed to plead—and would be required to prove—that defendants owed her a duty of care arising from an attorney-client relationship, defendants breached that duty, and she suffered an injury as a proximate result of defendants' breach. *Northern Illinois Emergency Physicians v. Landau, Omahana & Kopka, Ltd.*, 216 Ill. 2d

294, 306 (2005) (citing *Sexton v. Smith*, 112 Ill. 2d 187, 193 (1986)). We address the relevant elements in turn.

¶ 26                                    A. Duty

¶ 27    The parties do not dispute that defendants owed plaintiff a duty, as it was undisputed that an attorney-client relationship existed. Attorneys have a fiduciary duty to their clients, which includes the obligations of fidelity, honesty, and good faith. *Huang v. Brenson*, 2014 IL App (1st) 123231, ¶ 44. Defendants did not and do not argue that plaintiff failed to establish that defendants owed plaintiff a duty.

¶ 28                              B. The Standard of Care

¶ 29    To establish that defendants breached their duty to plaintiff, plaintiff was required to present evidence establishing the applicable standard of care and that defendants' conduct fell below that standard. In legal malpractice cases, "the standard of care against which the attorney defendant's conduct will be measured must generally be established through expert testimony." *Barth v. Reagan*, 139 Ill. 2d 399, 407 (1990). The failure to present expert testimony is ordinarily fatal to a legal malpractice claim, unless plaintiff can demonstrate that "the common knowledge or experience of laypersons is extensive enough to recognize or infer negligence from the facts, or where an attorney's negligence is so grossly apparent that a lay person would have no difficulty in appraising it[.]" *Id.* at 407-08.

¶ 30    Here, plaintiff does not explicitly identify Watkins's opinion as to the appliable standard of care. Instead, she cites *Cripe v. Leiter*, 291 Ill. App. 3d 155, 158 (1997) to support her assertion that "an attorney must exercise the knowledge, skill, and ability ordinarily possessed and exercised by members of the legal profession similarly situated, and to be ordinarily and reasonably diligent, careful, and prudent." Further, she cites *Horwitz v. Holabird & Root*, 212 Ill. 2d 1, 38 (2004) to

support her assertion that "[a]n attorney must deal honestly and fairly with their client, and to treat them with as much care as the attorney would treat himself." But she does not direct our attention to any portion of the record in which Watkins expressly testified to what, in his expert opinion, the applicable standard of care required of defendants in this case. A review of Watkins's deposition testimony shows that he did not specifically articulate his opinions as to what the standard of care required.

¶ 31     An examination of Watkins's deposition testimony shows the following. He testified that "I do believe that it is an ethical responsibility of a lawyer to inform a client so that they can make a reasonable decision about what to do as to whether or not their case has been dismissed by the [c]ourt for lack of prosecution." He believed that allowing a case to be DWP'd "indicates incompetence," and testified he had "never been involved in a malpractice case where there was a [DWP] that the defendant's attorney did not explain why it got [DWP'd] and it really didn't cause any damage." Further, with respect to the DWP and defendants' request for trial continuance, he testified "they were not properly representing the client, and that the reason I think that that was not properly representing the client is that I know, in general, when those sorts of things happen, the defendant offers less money." Regarding defendants' alleged conduct at the mediation, Watkins believed it would be appropriate for an attorney to discuss with their client what the breakdown of fees would be in the event of a recovery, but here, it was inappropriate for defendants to tell plaintiff that she would have to pay expenses if she lost because that was "a misrepresentation under their fee agreement." He stated it would be a breach of defendants' fiduciary duty to plaintiff to discuss what she would owe in costs if she ultimately lost the case. He stated defendants had "a complete, total fiduciary duty to make full disclosure and not to misled [*sic*] and do what the client wants them to do in spite of their recommendation," and that "[i]t is

11

not okay to say that they have an ethical duty to go into court and have her removed as the executor." He believed that defendants exerted pressure on plaintiff and coerced her into settling the case to secure their attorney fees. Watkins could not identify the Illinois Rule of Professional Conduct that governed his opinion and did not know what the Rules of Professional Conduct were called in Illinois.

¶ 32    From Watkins's testimony, we can ascertain that, in his opinion, the standard of care required defendants to (1) inform plaintiff that the wrongful death action had been DWP'd; (2) inform plaintiff that the DWP order and the request for trial continuance might adversely affect a settlement amount in the wrongful death action; (3) accurately inform plaintiff about her obligation to pay costs or expenses if she lost the case; and (4) refrain from misleading plaintiff about their ethical obligation to go to court and have her removed as executor if she refused to settle.

¶ 33                                   C. Breach

¶ 34    Plaintiff argues the circuit court erred by finding there was no genuine issue of material fact precluding summary judgment in defendants' favor on the issue of breach. She contends that Watkins "testified to several breaches, including breach of fiduciary duty, as imposed by the Rules of Professional Conduct." Specifically, Watkins "testified that [defendants] did not properly represent [plaintiff], that [defendants] misled her, and [defendants] breach[ed] the duty by making misrepresentations during the mediation and coercing [plaintiff] in accepting the settlement."

¶ 35    We agree with plaintiff that she presented some evidence that defendants breached the standard of care. Specifically, Watkins testified that defendants' conduct fell below the standard of care when they made misleading statements at the mediation about plaintiff's obligation to pay costs and expenses if they lost the case to persuade her to accept the settlement and threatened to

have her removed as executor if she refused to settle the case. Watkins laid an adequate foundation for his opinion that defendants' conduct breached their fiduciary duties and ethical obligations to plaintiff, since he opined that defendants misrepresented the parties' fee agreement—which in his opinion did not require plaintiff to pay costs or expenses if defendants were unable to recover on behalf of the estate—and improperly coerced plaintiff to settle the case. We believe that Watkins's testimony on these points created a genuine issue of material fact as to whether defendants' conduct fell below the standard of care that precluded the entry of summary judgment on the issue of breach.

¶ 36    However, the rest of plaintiff's arguments on the issue of breach falls flat. First, in her complaint, plaintiff alleged in part that defendants breached their duties to plaintiff by failing to adequately conduct discovery and prepare for trial. Watkins, however, was adamant that he would not be offering any opinions on the merits of the underlying wrongful death claims. Watkins may have generally opined that defendants' conduct reflected incompetence and being unprepared to try the case, but he offered no opinion on what the standard of care required with respect to handling discovery or proceeding to trial. As such, plaintiff did not present any expert testimony supporting the element of breach based on defendants' alleged failure to address the February 27, 2008, medical note, depose an unidentified doctor,[3] or disclose plaintiff's psychiatrist as a witness. In the absence of any evidence to support her allegations of these specific alleged breaches, the circuit court correctly found that plaintiff failed to identify any genuine issue of material fact as to whether those acts in the wrongful death action breached the standard of care.

¶ 37    Second, Watkins's opinions that the DWP order and the request for a trial continuance were breaches of the standard of care lacked an adequate foundation and would not have been

_____

[3]No party discusses the potential hearsay issues with plaintiff's allegation, which was not supported by any evidence other than plaintiff's own statement the unidentified doctor made the statement.

admissible at trial. "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Ill. R. Evid. 702 (eff. Jan. 1, 2011). For expert testimony to be admissible, "an adequate foundation must be laid establishing that the information the expert bases the opinion upon is reliable." *Taylor v. County of Cook*, 2011 IL App (1st) 093085, ¶ 32. "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing." Ill. R. Evid. 703 (eff. Jan. 1, 2011). "If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence." *Id.*

¶ 38    Here, there was no foundation for Watkins's opinions that defendants breached the standard of care by allowing for the entry of a DWP order or by requesting a trial continuance. Instead, Watkins' simply testified that, in his experience, "defendants will pay less money to settle a case that got [DWP'd] than they will for a case that didn't get [DWP'd]." When asked why he held this view, Watkins stated "[b]ecause it indicates incompetence on the part of opposing counsel." Notably, however, Watkins cabined that opinion by stating "remember, I'm not testifying about the value [of the settlement.]" He went on to testify, regarding the DWP order and the request for a trial continuance, that

> "I'm not testifying as to what the settlement was. I'm testifying as to what the conduct of the lawyers indicated to me, that they were not properly representing the client, and that the reason I think they were not properly representing the client is that I know in general, when those sorts of things happen, the defendant offers less money. I do not know that that's what specifically happened in this case."

Watkins's testimony sounds more like musing than an expert opinion. In essence, he believed defendants breached the standard of care by allowing for the entry of a DWP order—which the circuit court vacated within three weeks of its entry, allowing the parties to continue litigating and ultimately proceed to a mediation—and requesting a trial continuance because those things diminish settlement values, even though he expressly stated that he was not offering any opinion on whether a diminished settlement occurred here because of these acts. Furthermore, Watkins was entirely unfamiliar with litigation in Illinois and Cook County, did not identify, conduct, or rely on any studies or assessments of the effect of DWP orders and trial continuances on case values, and offered no specific opinion as to how the DWP order or request for a trial continuance affected the settlement value in this case. Plaintiff has not demonstrated that Watkins's opinions on these alleged breaches had an adequate foundation or would have been admissible at trial on those issues.

¶ 39                                    D. Damages

¶ 40    Plaintiff next argues that the circuit court improperly weighed Watkins's damages testimony and erred by finding Watkins's damages testimony to be speculative, that there were no actual damages, and that there is no genuine issue of material fact on the issue of damages. She contends that Watkins relied on his experience in opining that a DWP order always negatively affects a case's value, which in this case resulted in a "compromised settlement," and therefore Watkins's testimony demonstrated the existence of actual damages that would be calculated by the jury at trial. She also asserts that, despite having settled the case, she demonstrated that defendants' negligence may have affected the settlement amount, so a question of fact exists as to "what degree the attorney's negligence may have impacted the settlement."

15

¶ 41    The injury in a legal malpractice case "is a pecuniary injury to an intangible property interest caused by the lawyer's negligent act or omission." *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 222 Ill. 2d 218, 226 (2006). As our supreme court has explained:

> "The fact that the attorney may have breached his duty of care is not, in itself, sufficient to sustain the client's cause of action. Even if negligence on the part of the attorney is established, no action will lie against the attorney unless that negligence proximately caused damage to the client. The existence of actual damages is therefore essential to a viable cause of action for legal malpractice." *Id.*

¶ 42    Actual damages are never presumed and must be "affirmatively established" by plaintiff. *Northern Illinois Emergency Physicians*, 216 Ill. 2d at 307. "Unless the client can demonstrate that he has sustained a monetary loss as the result of some negligent act on the lawyer's part, his cause of action cannot succeed." *Id.* "Where the mere possibility of harm exists or damages are otherwise speculative, actual damages are absent and no cause of action for malpractice yet exists." *Id.* "Damages are considered to be speculative, however, only if their existence itself is uncertain, not if the amount is uncertain or yet to be fully determined." *Id.*

¶ 43    Here, plaintiff's alleged actual damages are purely speculative. As discussed above, Watkins's testimony that the DWP order diminished the value of the case lacked foundation, and he specifically testified that he did not know whether the DWP order negatively affected the settlement amount in this case. Plaintiff does not identify any other evidence tending to establish actual damages. While Watkins opined that defendants breached the standard of care, that testimony alone is insufficient to establish an actual pecuniary injury proximately caused by defendants' conduct. *Tri-G*, 222 Ill. 2d at 226. Furthermore, plaintiff's argument that defendants' conduct may have negatively affected the settlement falls short of her burden to show that there is

some evidence tending to show that to be true, particularly where Watkins repeatedly refused to opine on the settlement value or the merits of the underlying case. In other words, plaintiff cannot—on this record—demonstrate any genuine issue of material fact as to whether she suffered any injury proximately caused by defendants' alleged negligence.

¶ 44　　Finally, plaintiff asserts she suffered actual damages in the form of attorney fees she paid because of defendants' negligent conduct. **However, as discussed, plaintiff did not come forward with any evidence tending to show that the settlement she received was less than what she could have received, and therefore there was no genuine issue of material fact on the issue of damages. Her assertion that she was injured in the form of paying attorney fees for defendants' alleged negligent representation must fail where she has not shown that defendants' conduct resulted in any injury.**

¶ 45　　　　　　　　　　　　IV. CONCLUSION

¶ 46　　For the foregoing reasons, we affirm the circuit court's entry of summary judgment in favor of defendants and against plaintiff.

¶ 47　　Affirmed.