NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 221121-U

NO. 4-22-1121

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 31, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| NORMAN KOSTER, STERLING GRAIN & STORAGE, INC., and PEEP, INC., Plaintiffs-Appellants, v. SOUTHBEND, Defendant-Appellee. | ) ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of Lee County No. 19L37 Honorable Douglas E. Lee, Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Turner and Zenoff concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, finding no genuine issue of material fact existed to preclude summary judgment.

¶ 2    In December 2019, plaintiffs, Norman Koster, Sterling Grain & Storage, Inc., and PEEP, Inc., brought this action to recover damages from defendant, Southbend, for an allegedly defective oven that exploded. The trial court granted defendant's motion for summary judgment. On appeal, plaintiff argues the court erred when it granted summary judgment because there remained genuine issues of material fact regarding: (1) whether plaintiff lit the stove on January 1, 2018; (2) whether the kitchen contained sufficiently dangerous levels of liquid petroleum gas (LPG) on January 2, 2018, to cause an explosion when plaintiff turned the oven on; (3) whether the kitchen had ventilation; and (4) whether the stove knobs were in the "on" position at the time of the explosion. We affirm.

¶ 3                                     I. BACKGROUND

¶ 4         In 2011, plaintiff purchased an LPG oven from defendant. Plaintiff also purchased a used stove cooktop with five burners. The LPG oven and stove were installed by plaintiff in his 16-foot by 24-foot commercial kitchen that was housed within an 80-foot by 80-foot shop. Prior to 2018, plaintiff's use of the oven was limited to cooking cinnamon rolls each Thanksgiving or warming the kitchen during the winter. Plaintiff estimated he used the oven approximately 100 hours prior to January 2018. On December 31, 2017, and January 1, 2018, plaintiff used the oven to warm his kitchen without issue.

¶ 5         On January 2, 2018, plaintiff started the oven to warm the kitchen for an employee to perform work. Plaintiff turned one switch from the oven from "off" to "on" and another from "cool" to "bake." This was the same process plaintiff used the day prior without issue. This time, however, the oven exploded. The doors of the oven blew open and caused injuries to plaintiff and property damage to the kitchen. The Dixon Fire Department arrived on scene and checked for dangerous levels of gas but only found trace amounts. The fire department spoke to plaintiff, who stated the last thing he remembered was trying to light "the stove." Plaintiff did not smell LPG or any other unusual odor upon starting the oven. Plaintiff had never noticed an odor of LPG in the kitchen in previous years.

¶ 6         Rimkus Consulting Group, Inc. (Rimkus), was retained by defendant's insurer to investigate the oven's explosion. Juan Ramirez, a professional engineer, inspected the premises of the explosion in December 2018. In March 2019, Ramirez's report concluded the explosion was caused by  gas but was unable to determine the source of a gas leak and noted additional investigation would be required to determine the origin. Ramirez's March 2019 report notes photographs were taken during his initial visit and were retained and available upon request. The

report contained in the record only has three photographs attached to it. The report did not mention the stove burner knobs or have any attached photos of the stove knobs.

¶ 7        Ramirez returned in April 2019 with Ron Natoli of Robson Forensic, who was retained as plaintiff's expert, to inspect the premises of the explosion. This time, Ramirez noted some of the stove's knobs were in the "on" position. The stove and oven were removed and sent to a Robson Forensic's facility in Lancaster, Pennsylvania, and subsequently returned to plaintiff.

¶ 8        In November 2020, Eric Dempsey, a professional engineer working on behalf of Rimkus, inspected the premises of the explosion. Dempsey noted the stove's knobs were in the "on" position, which could not have been changed by the explosion itself. Dempsey's report stated the stove knobs were in the same position as photographed by Ramirez during his initial inspection in December 2018. Plaintiff stated he had not altered the stove knobs after the explosion. Dempsey reported the LPG came from the stove knobs being in the "on" position, causing gas to leak from two stove burners that were left on but not ignited. Dempsey was able to test the stove and oven valves using compressed nitrogen and determined the valves and ignitor for the stove and oven worked properly. Dempsey further noted the design of the oven permitted ambient air outside of the oven to enter into the oven. Dempsey concluded the LPG leaked from the stove into the oven along with ambient air, which was ignited by the oven ignitor, causing the explosion.

¶ 9        Plaintiff consulted with R. Don Deaver as an expert witness to testify the explosion was caused by a malfunctioning ignitor within the oven. Deaver would have testified that LPG contains the additive ethyl mercaptan as an odorant. Therefore, if the stove knobs had been left in the "on" position, plaintiff would have been able to smell LPG prior to the explosion.

Because plaintiff did not smell the ethyl mercaptan additive, it could not be the case the stove knobs had been left in the "on" position. Defendant moved to exclude Deaver's testimony. The trial court granted defendant's motion, stating Deaver was unqualified to offer expert testimony regarding the functioning of the oven. The court also noted Deaver had not provided a foundation as to whether the LPG contained ethyl mercaptan or the strength of its odor had it been present.

¶ 10    In January 2022, defendant filed a motion for summary judgment. In August 2022, the trial court entered a written order granting defendant's motion. The court found the oven was not unreasonably dangerous, nor was the explosion caused by a defect in the oven. Plaintiffs filed a motion to reconsider, which the court denied.

¶ 11    This appeal followed.

¶ 12                    II. ANALYSIS

¶ 13    On appeal, plaintiff argues the trial court erred when it granted defendant's motion for summary judgment because there were genuine issues of material fact regarding: (1) whether plaintiff lit the stove on January 1, 2018; (2) whether the kitchen contained sufficiently dangerous levels of LPG on January 2, 2018, to cause an explosion when plaintiff turned the oven on; (3) whether the kitchen had ventilation; and (4) whether the stove knobs were in the "on" position at the time of the explosion.

¶ 14                    A. Standard of Review and Burden of Proof

¶ 15    A trial court's grant of summary judgment is proper when "the pleadings, depositions, admissions, and affidavits on file establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Gillespie v. Edmier*, 2020 IL 125262, ¶ 9 (citing 735 ILCS 1005(c) (West 2018)). When determining whether a

- 4 -

genuine issue of material fact exists, a reviewing court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant. *Id.* "We review a motion for summary judgment in the light most favorable to the nonmoving party." *Id.* "In reviewing a trial court's grant of summary judgment, we do not assess the credibility of the testimony presented but, rather, determine only whether the evidence presented was sufficient to create an issue of material fact." *Lau v. Abbott Laboratories*, 2019 IL App (2d) 180456, ¶ 37. Our review of the trial court's order granting summary judgment is *de novo. Gillespie*, 2020 IL 125262, ¶ 9.

¶ 16        Recovery in a strict product liability action requires a plaintiff "plead and prove that (1) the injury complained of resulted from a condition of the product, (2) the condition was unreasonably dangerous, and (3) the condition existed at the time the product left the manufacturer's control." *Id.* ¶ 10. "These elements may be proven inferentially, by either direct or circumstantial evidence." *Mateika v. LaSalle Thermogas Co.*, 94 Ill. App. 3d 506, 508 (1981). Circumstantial evidence "must tend to negate other reasonable causes, or there must be an expert opinion that the product was defective." *Id.* In a strict product liability action, "circumstances shown must justify an inference of probability as distinguished from mere possibility." *Id.* "While a plaintiff is not normally required to prove his case at the summary judgment stage, he must present some facts to support the elements of his claim." *Id.*

¶ 17                         B. Lighting of the Stove

¶ 18        Plaintiff argues there is conflicting evidence as to whether he lit the stove on January 1, 2018. The Dixon Fire Department report states plaintiff recounted last lighting the stove on January 1, but plaintiff stated during his deposition that the last time he recalled using the stove was in November 2017 and he denied using the stove on January 1. Defendant argues there is no dispute because plaintiff misinterprets the fire department's report. Furthermore, the

- 5 -

trial court did not make a finding that plaintiff lit the stove on January 1. We agree with defendant.

¶ 19       Plaintiff has failed to show any genuine issue of material fact exists regarding the lighting of the stove. The fire department's report does not distinguish between the stove and the oven; rather, it simply uses the term "stove" throughout the report. The report recounts plaintiff stating he had lit the stove the day prior—January 1—without issue. This is consistent with plaintiff's earlier statements and argument that he had started the oven the day before the explosion without issue. In fact, defendant's statement of material facts in its motion for summary judgment expressly referenced plaintiff's statement to the fire department about lighting the stove. Plaintiff admitted the material fact and added that "the kitchen was heated no more than 5 minutes." See *Konstant Products, Inc. v. Liberty Mutual Fire Insurance Co.*, 401 Ill. App. 3d 83, 86 (2010) ("Judicial admissions are formal admissions in the pleadings that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact."). It is clear both parties were interpreting the fire department report's use of "stove" to mean oven. Therefore, no factual dispute exists between the parties regarding the lighting of the stove. *Id.* ("[A]ny admissions that are not the product of mistake or inadvertence also bind the pleader throughout the litigation."); *Monson v. City of Danville*, 2018 IL 122486, ¶ 12 (stating summary judgment is not meant to try an issue of fact, but rather to determine whether one exists).

¶ 20                    C. Sufficient Levels of LPG to Cause an Explosion

¶ 21       Plaintiff argues the record shows discrepancies regarding whether the LPG that caused the explosion contained ethyl mercaptan and whether the LPG levels in the kitchen were sufficient to cause the explosion.

¶ 22        Part of plaintiff's argument goes to the proffered testimony of Deaver. However, Deaver's expert testimony had already been excluded as unreliable and because its prejudicial effect would have substantially outweighed its probative value. Plaintiff, as the trial court noted in its order excluding Deaver's opinion and testimony, relied on the lack of an odor from the LPG to establish the oven as the sole cause of the explosion. However, plaintiff, on appeal, is not arguing the trial court erred by excluding Deaver's testimony and did not raise the exclusion of Deaver's opinion and testimony before the trial court. See *People ex rel. Ballard v. Niekamp*, 2011 IL App (4th) 100796, ¶ 40 (noting issues not raised in the trial court are forfeited and may not be raised on appeal). Additionally, plaintiff did not rely on Deaver's testimony during the summary judgment proceedings. See *Village of Arlington Heights v. Anderson*, 2011 IL App (1st) 110748, ¶ 15 ( "Theories not raised during summary judgment proceedings are [forfeited] on review."). Therefore, we need not address plaintiff's argument about ethyl mercaptan.

¶ 23        We find plaintiff has not provided any evidence to show a genuine issue of material fact exists regarding whether sufficient levels of LPG were present to cause an explosion. Plaintiff does not dispute the explosion was caused by LPG. The issue was whether the accumulation of LPG that exploded was caused by a defect in the oven. Arguing whether there were sufficiently dangerous levels of LPG at the time of the explosion does not identify a defect in the oven, particularly where plaintiff provides no evidence regarding the amount of LPG or its properties relative to the cause of the explosion. "Allegations that genuine issues of material fact exist without evidence to support those allegations fail to create an issue of material fact." *In re Estate of Frakes*, 2020 IL App (3d) 180649, ¶ 21.

¶ 24                        D. Kitchen Ventilation

¶ 25        Plaintiff argues there is a genuine issue of material fact regarding whether the kitchen had ventilation. Plaintiff contends Dempsey's report concludes the kitchen did not have ventilation, but plaintiff's testimony showed the oven had an opening for a vent and the kitchen had windows for additional air flow. Defendant argues whether the kitchen had ventilation is not a disputed material fact. We agree with defendant.

¶ 26        Plaintiff contends it is a question for the jury whether ventilation existed at the time of the explosion and whether that ventilation was sufficient for plaintiff's use of the oven. However, this issue would only be relevant if the explosion occurred outside the oven within the kitchen. Here, however, the explosion occurred in the oven because LPG had accumulated inside the oven. Plaintiff does not dispute this fact. Therefore, the issue of whether ventilation existed in the kitchen is not relevant in determining whether there exists a genuine issue of material fact relating to a defect in the oven. *Triple R Development, LLC v. Golfview Apartments I, L.P.*, 2012 IL App (4th) 100956, ¶ 16 ("[M]ere argument [is not] enough to raise an issue of material fact.).

¶ 27                E. Position of Stove Knobs at the Time of the Explosion

¶ 28        Finally, plaintiff argues his testimony that the last time the stove was used was in November 2017 shows the stove knobs were in the "off" position at the time of the explosion. Plaintiff contends the large gaps of time from after the explosion until the inspections of the stove by Ramirez and Dempsey raise doubt as to whether the knobs were altered to the "on" position after the explosion. Defendant argues plaintiff has provided no evidence the stove knobs were in the "off" position prior to, at the time of, or after the explosion. We agree with defendant.

¶ 29        The record shows two stove knobs were in the "on" position after the explosion. How the knobs were put into the "on" position is a matter of fact. Plaintiff testified he had not

altered the knobs after the explosion and the last time he had turned a stove knob to the "on" position was in November 2017. Therefore, the facts from the record show only plaintiff ever turned the stove knobs to the "on" position prior to the explosion. Plaintiff's argument that someone other than himself must have altered the stove knobs to the "on" position after the explosion is unsupported by any evidence in the record. Because there is no evidence, there is no reason to believe someone other than plaintiff had turned the stove knobs to the "on" position. Plaintiff's denial he altered the knobs after the explosion is consistent with the evidence showing the knobs were altered prior to the explosion. Any argument that the knobs were altered after the explosion is pure speculation. *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 328 (1999) ("Mere speculation, conjecture, or guess is insufficient to withstand summary judgment.").

¶ 30                                    F. Summation

¶ 31            Ultimately, plaintiff's appeal relies on various purported factual disputes found within the record. However, " '[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.' " (Emphases in original.) *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). "Genuine" in the context of genuine issues of material fact means there is evidence to support the position of the nonmoving party. *Pekin Insurance Co. v. Adams*, 343 Ill. App. 3d 272, 275 (2003). "Material" in the context of genuine issues of material fact means "facts that might affect the outcome of the case under the applicable substantive law." *Lau*, 2019 IL App (2d) 180456, ¶ 37.

¶ 32    Plaintiff's argument regarding the lighting of the stove on January 1, 2018, is simply not a factual dispute. Plaintiff's arguments regarding sufficiently dangerous levels of LPG to cause an explosion, or the stove knobs being altered after the explosion lack evidentiary support in the record to be considered *genuine* issues of material fact. Plaintiff's argument regarding adequate kitchen ventilation bears no relevance to plaintiff's underlying claim a defective oven caused the explosion and thus cannot be considered a genuine issue of *material* fact. In sum, our review of the record reveals there was no evidence (1) of any genuine issue of material fact or (2) showing defendant was not entitled to judgment as a matter of law.

¶ 33    III. CONCLUSION

¶ 34    For the reasons stated, we affirm the trial court's judgment.

¶ 35    Affirmed.